Cox v. State 






NO. 10-90-114-CR

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

Â Â Â Â Â Â Â Â Â Â HAROLD LEE COX, 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee

* * * * * * * * * * * * *

 From 87TH Judicial District Court
Freestone County, Texas
Trial Court # 90-036-CR

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â Â Â Â Â Â Â Â Â Â A jury convicted Appellant of forgery by passing and, having found that he had been twice
convicted of a felony, set his punishment at twenty-five years in prison. See Tex. Penal Code
Ann. Â§ 32.21 (Vernon 1989). Appellant contends that evidence of intent was insufficient to
sustain his conviction. This point will be overruled and the judgment affirmed.
Â Â Â Â Â Â Â Â Â Â Appellant was hired by J. C. Moore in February or March 1990 to do farm labor. Shortly
thereafter, he moved into a house next door to Moore and began to assist him with bookkeeping
and check writing. Moore's practice was to sign a blank check and then instruct Appellant to fill
in the name of the payee and the amount and, because of this arrangement, Appellant gained
access to Moore's checkbooks. Moore discovered in the March bank statement that check no.
1610 had been made payable to Appellant in the amount of $121.50. Moore had not signed or
filled in the check or authorized Appellant or any other person to sign it. The State introduced
evidence of thirteen other checks which Moore declared to be genuine. A bank teller gave
Appellant cash when he presented the check, which he had endorsed on the back. The county's
chief jailer identified a commissary sign in sheet containing Appellant's signatures. The State
presented no direct evidence of the actual signer of check no. 1610.
Â Â Â Â Â Â Â Â Â Â We believe the rule enunciated in Sheffield v. State, 645 S.W.2d 571, 573 (Tex. Crim.
App. 1982) (quoting Pfleging v. State, 572 S.W.2d 517, 519 (Tex. Crim. App. 1978) applies here:
Under this statute, the definition of forgery requires as an element of the offense
an intent to defraud or harm . . . . 
Thus, it is clear that intent to defraud or harm is a necessary element of the offense
of forgery and the burden is upon the State to prove every element of the offense charged
. . . .
The State may, of course, establish intent to defraud or harm by circumstantial
evidence.

Sheffield, 645 S.W.2d at 573.
Â Â Â Â Â Â Â Â Â Â Appellant's sole point attacks the sufficiency of the evidence to sustain his conviction. 
Evidence will sustain a conviction if, viewing it in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989).Â Â Â A conviction based on
circumstantial evidence cannot be sustained if the circumstances do not exclude every other
reasonable hypothesis except that of the defendant's guilt. Johnson v. State, 673 S.W.2d 190, 195
(Tex. Crim. App. 1984). Every circumstantial evidence case must be tested by its own facts to
determine the sufficiency of the evidence to support the conviction. Id.
Â Â Â Â Â Â Â Â Â Â We believe that the nature of the relationship which developed between Moore and
Appellant, that Appellant had access to Moore's checkbooks without authority to sign checks, and
the facts surrounding the presentation of check no. 1610 to the bank by Appellant, exclude every
reasonable hypothesis other than Appellant's guilt. See Johnson, 673 S.W.2d at 195. 
Â Â Â Â Â Â Â Â Â Â Viewing the evidence in the light most favorable to the verdict, we believe that any rational
trier of fact could have found the essential elements of the crime, including intent to defraud or
harm, beyond a reasonable doubt. See Butler, 769 S.W.2d at 239. We overrule Appellant's point
and affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Thomas, Justice Cummings,
Â Â Â Â Â Â Â Â Â Â and Justice Vance
Affirmed
Opinion delivered and filed February 7, 1991
Do not publish



ety of the
child, and: failed to complete a court-ordered substance abuse treatment
program; or after completion of a court-ordered substance abuse treatment
program, continued to abuse a controlled substance.Ô  See Id. § 161.001(1)(P).Â  

Â Â Â Â Â Â Â Â Â Â Â  Only one predicate act finding under
section 161.001(1) is necessary to support a judgment of termination in
addition to a finding that termination is in the child's best interest.Â  In
re A.V., 113 S.W.3d 355, 362 (Tex. 2003).Â  Based on the juryÂs verdict, the
trial court made a finding that it was in the best interest of D.W. to
terminate J.W.Âs parental rights.Â  Because J.W. does not challenge the sufficiency
of the evidence supporting the finding under subsection (P), this ground is
sufficient to support the judgment of termination.Â  See In re T.S.C.,
No. 10-06-00366-CV, 2007 Tex. App. LEXIS 3390 (Tex. App.ÂWaco May 2, 2007, no pet.) (mem. op.).Â  J.W.Âs first, second, and third issues are overruled.

Best Interest

It is well-settled that in deciding whether
termination would be in the best interest of the child, the trial court may
consider this nonexclusive list of factors: (1) the desires of the child; (2)
the emotional and physical needs of the child now and in the future; (3) the
emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.Â  Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).Â  See In re S.N., 272 S.W.3d 45, (Tex. App.ÂWaco 2008, no pet.).Â  It is
unnecessary to prove all of these factors as a condition precedent to parental
termination.Â  In re C.H., 89 S.W.3d 17, 27 (Tex. 2002).

The evidence demonstrated that J.W. had been
abusing marijuana since the age of 12, cocaine at the age of 14, and
methamphetamines at the age of 16.Â  She admitted to using marijuana during a
previous pregnancy and tested positive for methamphetamines at the hospital
when D.W. was born.Â  She admitted to the use of methamphetamines three days
prior to D.W.Âs birth.Â  J.W.Âs drug use continued after D.W. was removed by the
Department, even though she denied that she had a drug problem.Â  Her felony
probation was eventually revoked due to her many positive drug tests and her
refusal to get treatment.Â  J.W. was incarcerated at the time of trial on a four-year
sentence.Â  While she had started parenting classes, she did not complete them
and did not attend counseling as required by her service plan.Â  Her employment
history while she was not incarcerated was spotty at best.Â  J.W. absconded from
 Texas and remained a fugitive for almost five years ending in 2007, during
which time she became pregnant with D.W.Â  During the pendency of the case, she
was dating a person accused of at least one felony offense and who was also a
drug user.Â  According to the Department, J.W. missed thirteen out of thirty
visits with D.W. and also was significantly late for another five or six
visits.Â  At one point during the case, J.W. also left her older child, A.W.,
with her mother who had recently been arrested for a drug offense.Â  When the
Department investigated, J.W. hid out because she said she was afraid of being
arrested in front of A.W.

D.W. was in a placement that he had been in from
the time he was three weeks old with foster parents who wanted to adopt him.Â 
He was very bonded to the foster parents and to their children, who think of
D.W. as their sibling.Â  D.W. was described as a very happy baby. Â D.W. had been
evaluated early in the case for potential developmental delays but was doing
well at the time of trial.Â  D.W. was well-integrated into the foster parentsÂ
family unit.Â  We find that the evidence was both legally and factually
sufficient to support the trial courtÂs finding that termination was in the
best interest of D.W.Â  We overrule J.W.Âs issue four.

C.H.

Â Â Â Â Â Â Â Â Â Â Â  C.H. was determined to be the father
of D.W. during the pendency of this case.Â  In his first issue, C.H. complains
that the trial court erred in determining that he had Âengaged in conduct Â
which endangers the physical or emotional well-being of the child.Â Â Tex. Fam. Code Ann. Â§ 161.001(E)
(Vernon Supp. 2009).Â  His contention is that because he was incarcerated when
he found out that J.W. was pregnant, there was legally and factually
insufficient evidence he engaged in any conduct prior to his knowledge of his
potential paternity that endangered D.W. either physically or emotionally and
additionally that his present environment in prison did not endanger him.Â  

Â Â Â Â Â Â Â Â Â Â Â  Imprisonment alone does not constitute
engaging in conduct which endangers the emotional or physical well-being of a
child; however, it is a factor properly considered on the issue of
endangerment.Â  Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d
531, 533-34 (Tex. 1987).Â  C.H. is incorrect in his assertion that his conduct
prior to his knowledge and establishment of paternity cannot constitute
endangering conduct sufficient to support a finding under section 161.001(E).Â 
While knowledge of paternity is a prerequisiteÂ to a showing of knowing
placement of a child in an endangering environment under section 161.001(1)(D),
it is not a prerequisite to a showing of a parental course of conduct which
endangers a child under section 161.001(1)(E). Â Â In re M.J.M.L., 31 S.W.3d 347, 351 (Tex. App.ÂSan Antonio
2000, pet. denied).Â  C.H. makes no argument that his conduct prior to the birth
of D.W. would not demonstrate a course of conduct that endangers the emotional
or physical well-being of D.W.Â  However, C.H. has an extensive criminal
history, which includes twelve arrests, three felony convictions, and seven
misdemeanor convictions.Â  C.H. had been incarcerated beginning in 1999 for
periods of time aggregating over 5-Â½ years at the time of trial with another
almost two years to do that was remaining on his current sentence.Â  C.H. had a
significant history of past methamphetamine and marijuana use.Â  Also, C.H. had
failed to attempt to contact or provide support for D.W. in any manner since
D.W.Âs birth even though he knew J.W. was pregnant before the child was born.Â 
However, at the same time C.H. maintained contact with, sent gifts to, and
provided support for another biological child of his.Â  Using the appropriate
standards, this constitutes both legally and factually sufficient evidence of a
course of conduct that endangers the emotional or physical well-being of D.W.Â 
We overrule C.H.Âs issue one.Â  

Â Â Â Â Â Â Â Â Â Â Â  Because there is sufficient evidence
to support the finding under section 161.001(1)(E), it is not necessary to
address C.H.Âs second and third issues challenging the sufficiency of the
evidence to support a subsection 161.001(1)(N) constructive abandonment or
subsection 161.001(1)(Q) imprisonment finding.Â  C.H. does not challenge the
finding of termination being in the best interest of D.W.

Â 

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  We find that the evidence is legally and factually sufficient to support
the juryÂs findings regarding termination of the parent-child relationship
between J.W. and D.W.Â  We find that the evidence is legally and factually
sufficient to support the juryÂs findings regarding termination of the
parent-child relationship between C.H. and D.W.Â  We affirm the judgment of the
trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Before
Chief Justice Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Reyna, and

Â Â Â Â Â Â Â Â Â Â Â  Justice
Davis

Affirmed

Opinion
delivered and filed December 30, 2009

[CV06]