**Karl D. JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 031–83.**

Court of Criminal Appeals of Texas, En Banc.

June 20, 1984.

Mark C. Hall, Lubbock, for appellant.

Jim Bob Darnell, Dist. Atty. and Hollis M. Browning, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This is an appeal from a conviction for injury to a child, V.T.C.A., Penal Code, § 22.04(a)(1) and (b), as amended in 1979.[1] Punishment was assessed by the jury at 20 years' imprisonment.

On appeal the conviction was affirmed by the Amarillo Court of Appeals in an unpublished per curiam opinion. *Johnson v. State*, No. 07–81–0196–CR, November 17, 1982.

Appellant filed his petition for discretionary review contending the Court of Appeals erred in holding the evidence sufficient to sustain the conviction. He contends there was not as a matter of law sufficient proof of the corpus delicti, that the evidence was insufficient to prove an intentional and knowingly perpetrated criminal act, and the Courts of Appeals erred in holding that evidence which merely negated that the death was the result of an accident was thus also sufficient to sustain his conviction. Appellant also urges the Court of Appeals erred in holding the trial court did not abuse its discretion in allowing Dr. Mires to testify as an expert and to express an opinion as to an ultimate fact issue. We granted discretionary review to

---

1. Acts 1979, 66th Leg., p. 365, ch. 162, § 1, eff. Aug. 27, 1979.

determine the correctness of the Court of Appeals' decision.

Count two of the indictment [2] upon the trial proceeded reads in pertinent part that

"... on or about the 2nd day of February, A.D. 1980, and anterior to the presentment of this indictment, in the County and State aforesaid, Karl Johnston,[3] did then and there intentionally and knowingly engage in conduct that caused serious bodily injury to Brandon Fansler, a child younger than 14 years of age, by then and there striking the said Brandon Fansler on the head, manner and means of which is unknown to the grand jurors...."

We shall trace the evidence as it was presented. The State initially called Dr. Eugene Stalnaker of the staff, Methodist Hospital, Lubbock. On February 2, 1980, he was called to the emergency room when 19-month-old Brandon Fansler was brought to the hospital about 11:40 a.m. The child was not breathing adequately and the doctor observed fresh [4] abrasions on the child's forehead and chin. He ordered x-rays and attempted to resuscitate the child. Fifty minutes after arrival (12:30 p.m.) the child was dead.

Dr. Cadman Chaffin, radiologist at the Methodist Hospital, examined the x-rays taken of the child and observed a linear fracture to the right rear skull. He testified the fracture could have caused death.

Bill Drewell, Lubbock County deputy sheriff, responded to a call and went to the Methodist Hospital on February 2, 1980. There he encountered the appellant, and in trying to determine what had happened, asked the appellant. The appellant stated he had his car jacked up to work on the muffler, that he went inside the trailer house to get some tools and when he came

outside the car had fallen off the jack and the child was underneath the vehicle.

Dr. Jose Diaz-Esquivel, a forensic pathologist, performed the autopsy on the child. On reflecting the scalp the doctor observed a contusion to the right rear of the skull and an underlying hematoma. He described this injury as fresh, but no time frame for the occurrence of the injury was established. Dr. Diaz-Esquivel testified the cause of death was mid-brain hemorrhage, secondary to a subdural hematoma, secondary to fractured skull, secondary to trauma. Dr. Diaz-Esquivel stated, in his opinion, the injuries sustained by the child were not consistent with a car falling and striking the child.[5] When asked within reasonable medical probability what caused the trauma which resulted in the death, the doctor replied:

"A blow with a blunt surface—or with a surface or with a very blunt instrument. By 'very blunt' I mean almost flat surface because I did not find—it was not a curved surface, let's put it that away. It had to be sort of a flat surface."

District attorney investigator Steve Holmes testified that on February 5, 1980, he and Texas Ranger Jackie Peoples went to the trailer park where the incident supposedly occurred. They observed a 1971 Pontiac LeMans automobile parked at the trailer house in question. Later they obtained a search warrant and returned about 11:15 p.m. with an assistant district attorney. Later the district attorney and a deputy sheriff and others arrived. They found a car jack and jack stand near the car. The "tab" or "lip" of the jack was bent. Holmes stated Peoples or deputy Ernest Rector straightened out somewhat the "tab" on the jack, that they had a little trouble with it, but thereafter the car was jacked up, and it would not fall despite

---

**2.** The first count charged murder, but the appellant was not tried upon this count.

**3.** Appellant suggested that his correct name was Johnson and the indictment was later amended to reflect his correct name.

**4.** Dr. Stalnaker said the abrasions had occurred 15 minutes to two hours before he observed them.

**5.** Part of the doctor's conclusion was based in part on the lack of a major injury to the face or front of the deceased's head.

several of the men pushing on the rocking car. The car was hauled away by a wrecker service.

Ranger Peoples generally corroborated Holmes' testimony. He related they had found an old jack near the car that night, and the "tip" or "teat" was bent to the side "a half inch off vertical," but it was used without anyone bending it "back out straight" as he recalled. The car was pushed and rocked, but it did not come off the jack.

Deputy sheriff Rector testified he was present when a jack was found and that the "prong" was slightly bent to the right and that he did not bend the jack to straighten it; that the jack was used without difficulty. The car was pushed and rocked, but the jack did not slip or fall. Rector testified that he saw the car again at the yard of the Lubbock Wrecker Service where the car was jacked up by use of the same jack and that the jack would not slip or fall after the car was rocked. He did observe that underneath the car the muffler was disconnected from the tailpipe.

Captain Alton Hobbs of the sheriff's office testified that he was present with others at the trailer park on the night of February 5, 1980; that he saw the car in question jacked up and that he tried to push it off the jack and could not. He observed that the muffler was disconnected from the exhaust pipe. Hobbs did not find any blood, hair or dents indicating the car had fallen on anyone.[6]

Raymond W. Mires, Professor of Physics at Texas Tech University, testified on February 7, 1980, he went to the trailer park with two deputies (Rector and Drewell) and observed the area there and then went to the Lubbock Wrecker Service where the car in question was located. He had the car jacked up and tried to dislodge it, and took numerous measurements. Based on his tests he expressed the conclusion the jack would not fall while the car was jacked

up and the dimensions above ground level of the undercarriage of the car would not permit a child to move underneath the car. On cross-examination Mires admitted that if the undercarriage was raised a child could get his head underneath the undercarriage.

The appellant moved for an instructed verdict at the close of the State's case-in-chief at the guilt stage of the trial. Attention was called to the allegations of the indictment and the lack of proof to support the same; that the corpus delicti was not proven, etc. The motion was overruled.

Appellant called Ricky Sharp, who testified that in late January, 1980 he, Kevin Bacon and appellant were driving in Calvin Evans' Pontiac LeMans automatic when the car hit a snow clod and broke the muffler loose. Evans, an airman, testified that he loaned his Pontiac LeMans to the appellant in November, 1979, as he (Evans) was going to be on temporary duty in North Dakota. On January 28, 1980, he talked to appellant over the telephone and was told the car hit a pile of snow and that the muffler was broken loose from the tailpipe. Appellant told him he planned to repair the car himself the next Saturday. Evans stated the lip of his car jack was not bent when he went to North Dakota.

The Owner's Manual for the car was introduced. It cautioned the owner to use the jack only to change tires, and not to get under the car while the jack was in use.

Reverend J.F. Campbell, Carlisle Baptist Church, testified on February 2, 1980, he went to the nearby Town ad Country Mobile Home Park to call upon the appellant to urge him to come to church the next day. He estimated his arrival at 11:05 a.m. He related the appellant came to the door of the trailer, and in the course of the conversation told him that he (appellant) was putting a muffler on his car. Campbell saw a car in the yard jacked up at the time.

---

**6.** The medical testimony dispels any notion that the deceased had an open, hemorrhaging wound that would have left blood at the scene of the injury. In fact, Dr. Stalnaker had to search to find the contusion on the deceased's head. Further, when found under the car, the deceased had a jacket hood covering the head.

Danny Weatherford testified for the defense[7] that he lived two trailers away from the appellant, whose name he did not know on February 2, 1980. That morning he was waxing his car about 11:15 or 11:20 a.m. when appellant Johnson approached and asked his help saying his car had fallen on his baby. Weatherford rushed with appellant to the car and Weatherford observed the child, Brandon Fansler, under the car, his head under the tailpipe just past the mid-portion of the car. Appellant requested Weatherford to jack the car up. Weatherford grabbed the nearby car jack, but noticed it had a bent "clip" or "lip." He ran and got his jack and jacked the car up, and appellant removed the child from under the car. Weatherford observed the child had on a jacket with the hood over his head. He pushed back the hood and saw the child was breathing but had grass in its teeth. He lowered the jack, got in the back seat of the car with the child, and appellant drove to the hospital. He stated the car made a loud muffler noise which he had heard previously when appellant had driven into the trailer park.

Mary Gomez testified she was a fellow employee at Lee Optical with Rhonda Fansler; that on February 2, 1980, Rhonda arrived at work about 10 a.m.; that between 11 and 11:30 a.m. Rhonda received a phone call and began crying. Gomez drove Rhonda to the hospital where she saw the appellant. She described appellant and Rhonda as upset.

The appellant did not testify nor did Rhonda Fansler.

After the defense rested, the State recalled Ranger Peoples, who testified he had talked to the Rev. Campbell during his investigation, and that Campbell told him the car had not been jacked up when he visited the appellant. Peoples admitted he had not included Campbell's statement in his report but recalled it.

7. The indication in the Court of Appeals' opinion that Weatherford was a State's witness is in error.

8. The Court of Appeals' opinion states Rhonda was Brandon's mother, but there is no direct

The evidence is meager as to appellant's relationship with the child. There was some inference that appellant lived with Rhonda Fansler, but no evidence to show her relationship to the child.[8] There was no showing of any prior abuse of the child by the appellant, no assaults, no beatings, or even any showing of any hostile attitude. No instrument or weapon was found.

The court charged the jury on the law of circumstantial evidence. See and cf. *Hankins v. State*, 646 S.W.2d 191 (Tex.Cr.App. 1981).

The elements of the offense under the indictment are (1) a person (appellant) (2) intentionally and knowingly (3) engaged in conduct (4) causing serious bodily injury (5) to a child (Brandon Fansler) 14 years or younger (6) by striking the child on the head (7) by manner and means to the grand jury unknown.

V.T.C.A., Penal Code, § 2.01, provides:

"All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined or indicted for, or otherwise charged with, the offense gives no rise to an inference of guilt at his trial." See also Article 38.03, V.A.C.C.P.

The burden of proof in a criminal case is on the State, and it is incumbent on the State to prove every element of the offense beyond a reasonable doubt. *Wright v. State*, 603 S.W.2d 838 (Tex.Cr. App.1980); *Evans v. State*, 623 S.W.2d 924 (Tex.Cr.App.1981), and this is true whether the State is relying upon circumstantial or direct evidence. See *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978). The State, being bound by its allegations in the indictment, must prove beyond a reasonable

evidence to support that fact. At the penalty stage of the trial appellant's father testified that in February, 1980, appellant married "Rhonda." Later the appellant testified he was married to "Rhonda J. Johnson."

doubt. *Butler v. State,* 429 S.W.2d 497 (Tex.Cr.App.1968).

"In case of reasonable doubt as to guilt, a defendant is entitled to be acquitted. In other words, a conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused." 24 Tex.Jur.3rd, Criminal Law, § 2987, p. 71.

Since this is a circumstantial evidence case, we note the recently discussed standard of review in such cases. In *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Cr.App. 1983) (opinion on rehearing) this court stated:

"It follows that circumstantial evidence should not be tested by an ultimate 'standard of review' different from direct evidence; the standard in both kinds of cases is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Accord *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr.App.1981).

"Still, we are unable to devise or discover any reason, compelling or otherwise, for abandoning the utilitarian 'exclusion of outstanding reasonable hypothesis' analysis for applying the above 'standard for review' in circumstantial evidence cases. By the nature of circumstantial evidence, in order to determine it rationally establishes guilt beyond a reasonable doubt, a process of elimination must be used. Illustrative is *Taylor v. State,* 653 S.W.2d 295 (Tex.Cr.App.1983). We there cited the *Jackson* 'standard for review;' in actually assessing the evidence, no method other than a procedure of eliminating the guilt of others under the evidence could be fashioned to effectively conclude the evidence rationally established Taylor's guilt beyond a reasonable doubt. See also *Girard v. State,* 631 S.W.2d 162 (Tex.Cr.App.1982). Stated in the converse, if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding." See also *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App.1983) (opinion on

rehearing); *Freeman v. State,* 654 S.W.2d 450 (Tex.Cr.App.1983) (opinion on rehearing); *Denby v. State,* 654 S.W.2d 457 (Tex.Cr.App.1983) (opinion on rehearing); *Houston v. State,* 663 S.W.2d 455 (Tex.Cr.App.1984).

Thus, it is still clear that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Pickering v. State,* 596 S.W.2d 124 (Tex.Cr.App.1980); *Bryant v. State,* 574 S.W.2d 109 (Tex.Cr.App.1978); *Schershel v. State,* 575 S.W.2d 548 (Tex.Cr.App.1979). Thus proof which amounts only to a strong suspicion or mere probability is insufficient. *Ford v. State,* 571 S.W.2d 924 (Tex. Cr.App.1978). And it must be borne in mind that every circumstantial evidence case must be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Earnhart v. State,* 575 S.W.2d 551 (Tex.Cr.App.1979); *Pickering v. State,* supra; *Faulk v. State,* 608 S.W.2d 625 (Tex.Cr.App.1980); *Hooker v. State,* 621 S.W.2d 597 (Tex.Cr.App.1981) (opinion on rehearing).

We note appellant's contention that the "corpus delicti" of the offense was not established, that there was not sufficient evidence of a criminal act. Dr. Diaz-Esquivel testified the fatal injury was a "blow with a flat surface, ... or a very blunt instrument ... not a curved surface ... sort of a flat surface." The pathologist did not speculate how the blow could or could not have occurred. He did not testify that it had to be by human means. He stated it was not consistent with a car falling on the deceased. No criminal instrument was found at the scene nor suggested by the pathologist. There were no eyewitnesses to the child's injury. Even before we reach the question of the appellant's complicity, it does not appear that the State established that a criminal act was committed by someone, the corpus delicti of the offense.

In *Phillips v. State,* 164 Tex.Cr.R. 78, 297 S.W.2d 134, 135 (1957), this court stated:

"It is a well recognized principle of law in this State that, to sustain a conviction, it should appear not only that an offense as charged has been committed but there should also be proof to a degree of certainty greater than a mere probability of strong suspicion tending to establish that the party charged was the person who committed or was a participant in its commission. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him." See also *Ates v. State*, 644 S.W.2d 843 (Tex.App.1982); 24 Tex.Jur.3rd, Criminal Law, § 2983, p. 63.

Even if it could be argued that the alleged offense was committed by someone, does the evidence show beyond a reasonable doubt that the appellant is the person who committed the crime? The State says yes. It points to deputy Drewell's testimony that appellant told him at the hospital that while (he) was in the trailer house the car fell off the jack and the child was underneath the car, and to the testimony that the injury was inconsistent with a car falling on the child, and experiments that when jacked up the car would not fall despite pushing and rocking efforts. The State appears to argue that it was appellant's statement to Drewell that the incident was an accident, and this was disproved and the jury by their verdict rejected the same.

▮ It is true that a jury, sitting as the trier of facts, may accept or reject any or all of the testimony adduced. *Ables v. State*, 519 S.W.2d 464, 465 (Tex.Cr.App. 1975); *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex.Cr.App.1974). See also *Reese v. State*, 653 S.W.2d 550 (Tex.App.—Beaumont—1983). A jury, however, may not reach a verdict based on speculation. *Reese v. State*, supra. The fact the jury was entitled to disregard appellant's statement to Drewell does not justify a conviction in this case.

In *Wright v. State*, 603 S.W.2d 838 (Tex. Cr.App.1980), a panel of this court on original submission wrote:

"Once the court concluded that Wright's testimony was fabricated, the only other explanation for the facts was that Wright murdered Arnold. The evidence was sufficient."

On rehearing the court en banc in granting appellant's motion for rehearing and reversing the judgment wrote:

"... *The fact that the trial judge was entitled to disregard the appellant's testimony does not mean that the missing elements of the offense are supplied by rejecting this testimony.* The burden of proof is on the State, and it is incumbent on the State to prove every element of the offense. See *Grant v. State*, 566 S.W.2d 954 (Tex.Cr.App.1978). The evidence in this case is not rendered sufficient by the trial judge's apparent disbelief of appellant's testimony.

\* \* \* \* \* \*

"Mere presence at the scene of the crime alone is not sufficient to conclude that the accused committed the offense beyond a reasonable doubt. *Johnson v. State*, 537 S.W.2d 16 (Tex.Cr.App.1976). While it is a circumstance which tends to prove guilt, it is necessary that this circumstance be combined with other facts to show that the accused is guilty of the crime. *Johnson v. State*, supra. In this case, there is nothing other than appellant's presence at the scene which would tend to show his involvement in the stabbing.

"A conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused; proof amounting only to a strong suspicion is insufficient. *Young v. State*, 544 S.W.2d 421 (Tex.Cr. App.1976). The evidence in this case is clearly insufficient to show that the appellant stabbed the deceased." (Emphasis supplied.)

The fact the jury in the instant case was entitled to disregard the accident story to deputy Drewell (and offered by the State) does not mean that the missing elements of

the charged offense are supplied by this rejection. *Wright* is here controlling.

■ We do not conclude that the State sufficiently showed the crime alleged was committed by someone, or if it did, it did not sufficiently show the appellant's complicity in the offense. Mere presence alone is not sufficient. *Moore v. State,* 532 S.W.2d 333 (Tex.Cr.App.1976). Proof which amounts only to a strong or mere probability is not enough. *Ford,* supra. Further, there is no showing that the act was committed intentionally and knowingly. Cf. *Stuebgen v. State,* 547 S.W.2d 29 (Tex.Cr.App.1977), and *Pfleging v. State,* 572 S.W.2d 517 (Tex.Cr.App.1978). As reluctant as we are to set aside a jury's verdict, this circumstantial evidence case, tested by its own facts, is not sufficient to support conviction when the standard of review discussed in *Wilson* is applied.

We need not reach appellant's other contention.

In light of *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), the appellant is entitled to an acquittal.

The judgments of the Court of Appeals and trial court are reversed and remanded to the trial court for an entry of a judgment of acquittal.

W.C. DAVIS, Judge, concurring.

Although I believe it should be noted that fabrication, although hardly sufficient to support a conviction, is probative of an accused's knowledge of wrongdoing in the same way as is flight, I agree that the State has failed to show that the victim's death was the result of an intentional act, and a fortiori that it was the result of an intentional act by appellant.

I write to point out that appellant's own evidence in this case would appear to support a conviction for criminally negligent, or perhaps even reckless, injury to a child, both of which are condemned by the same statute under which appellant was charged.[1]

The indictment in the instant case alleged only intentional injury, however, and the charge to the jury of course authorized conviction only upon that theory.[2]

In light of the failure of the State to plead in the alternative a mode of committing the offense which was supported by proof, I join the majority in finding the evidence insufficient.

CAMPBELL, J., joins.

---

1. At the time of the alleged offense, V.T.C.A., Penal Code, Sec. 22.04 provided:

 (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct that causes serious bodily injury, serious physical or mental deficiency or impairment, or deformity to a child who is 14 years of age or younger.
 (b) An offense under this section is a felony of the second degree.

 The legislature replaced that statute, effective September 1, 1981, with a new scheme which, inter alia, provides that the offense of reckless injury to a child is now a third degree felony, rather than second degree, and criminally negligent injury is now a class A misdemeanor, but the changed statute explicitly provides for the use of the old scheme for offenses committed prior to the effective date of the new statute. Acts 1981, 67th Leg., p. 472, ch. 202, 35.

2. Unlike those included offenses which provide a lesser punishment, the offense alleged in the instant case would have been in no way mitigated by proof of the lesser culpability, see fn. 1, ante, and the State was thus bound by its charging instrument. The court would not have been authorized in charging upon the included offense, because it is not a *lesser* offense. Cf. Art. 37.09, V.A.C.C.P. In the instant case, the offense charged and the offense requiring lesser culpability were the *same* offense.