**Ricky O'Neal WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 6–87–054–CR.

Court of Appeals of Texas,
Texarkana.

May 24, 1988.

David C. Turner, Bonham, for appellant.

Dan Meehan, Dist. Atty., Fannin County, Bonham, for appellee.

CORNELIUS, Chief Justice.

Ricky O'Neal Williams appeals his conviction for aggravated kidnapping. His only contention on appeal is that the evidence is insufficient to support the judg-ment. Having carefully reviewed the record, we find the evidence sufficient and will affirm the judgment.

Both the State and Williams agree that the State's case rests on circumstantial evidence, and correctly suggest that this Court must review the evidence in the light most favorable to the jury verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Houston v. State,* 663 S.W.2d 455 (Tex. Crim.App.1984); *Carlsen v. State,* 654 S.W.2d 444 (Tex.Crim.App.1983) (opinion on rehearing). The only element of the offense allegedly lacking sufficient proof is that Williams was the perpetrator.

Williams correctly points out that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190 (Tex. Crim.App.1984).

The defense did not present any evidence. The State's case showed that on June 2, 1987, Millie Ross, a seventy-six year old resident of Bonham, Texas, received a phone call informing her that she had won a gift certificate at the Wal–Mart in Bonham. She drove to the Wal–Mart where employees informed her that they knew nothing about a gift certificate. She then went back to the parking lot and got in her car to return home. She was driving south on Center Street when an intruder in the back seat of her car made his presence known. Ross testified that the person was a black male, who was wearing a checkered or plaid shirt, had a pillow case with eye holes in it over his head, and had a butcher knife. He demanded that she turn the car around and go north, and told her that he was going to kill her with the knife.

As Ross approached Lehdes Food Store on Center Street, she saw a pickup truck in the parking lot, and deliberately crashed her car into the truck in order to force the intruder out of the car. He fled the car and, according to Ross and other witnesses, ran down Denison Street, which runs per-

pendicular to Center Street and is south of Lehdes.

Marilyn Gibson, who had seen Ross at Wal–Mart, had noticed Ross' erratic driving and believed she might be suffering a heart attack. She saw another person in the back seat of the car leaning over Ross, and thought he was trying to help her control the car. She followed Ross down Center Street hoping to help her. After the collision, she saw a man jump out who had a knife in his hand and was trying to fix something, which appeared to be a pillowcase, over his head. She tried to follow him in her car as he fled by foot, but after he ran behind a house on Denison Street, she did not see him again. She testified that the man running out of the car had on jeans and a multi-colored shirt.

Another witness also attempted to follow the fleeing assailant. H.C. Harlan, Jr. was sitting in his pickup truck in the Lehdes' parking lot waiting for his wife to come out of the store. The sound of squealing tires caught his attention and caused him to turn and see Ross' car just before it collided with the pickup truck about thirty feet from Harlan's vehicle. He saw a fleeing man duck around the south side of Lehdes. Harlan started his car after the fleeing man but immediately lost track of him. Harlan alerted an employee of Red's Body Shop, which is across Denison Street and on the same block as Lehdes, of the incident, and then parked his truck on Main Street, which is the next north-south street one block west of Center. He waited to see if the man would cross the street, but he never did so. Harlan described the person as a black man with something wrapped over his head, wearing a colored or checkered shirt and blue jeans, and carrying a knife.

Lieutenant Michael Bennett of the Bonham police department arrived at the scene of the accident shortly after it occurred. Three other Bonham police officers and a state highway patrol trooper came to the scene about the same time. Bennett, along with one other police officer and the highway patrol trooper, searched the area on Denison behind Lehdes where the assailant had fled.

There are two houses that face south on Denison and are behind the south side of Lehdes between Center and Main. Behind one of the houses is a fenced-in area and behind the other is a shed. Bennett found Williams crouched in the corner of the shed, which is located about 250–300 feet away from the point of the accident, apparently trying to hide. It was about fifteen minutes after the collision when Bennett found Williams. Williams did not offer any resistance when Bennett requested that he show himself. Bennett testified that Williams was wearing jeans, a "kind of gray" striped shirt and was sweating profusely. He also stated that Williams was the only person he and the other officers located in the area that matched the general description of the attacker.

Bennett also found evidence in the shed which the State introduced to link Williams with the crime. A pillowcase with some holes either cut or torn into it hung on a rack some seven to eight feet from the appellant, and it was damp. There was also a kitchen knife with a six and three-quarter inch blade lying near Williams. The State also introduced into evidence photographs and a sketch of the area, the kitchen knife and pillowcase recovered by Officer Bennett, and the shirt worn by Williams when he was arrested.

The State's witnesses were not able to positively identify Williams as the man they saw fleeing Ross' car. However, the general descriptions given by H.C. Harlan and his wife were very similar to Bennett's open-court description of Williams. Gibson and the Harlans also testified that the shirt taken from Williams after his arrest and introduced into evidence was similar to the one worn by the escaping assailant, and all of the State's witnesses stated that the person was a black man.

Part of the State's proof is based on Williams being found hiding in the area of the crime shortly after its commission. All of the State's witnesses testified that they saw the man run around the south end of Lehdes heading west on Denison Street

and then up an alley behind one of the houses facing south on the block between Center and Main and Lehdes. H.C. Harlan testified that after seeing the man take this path he parked his vehicle on Main and watched to see if he would cross the street, but he did not. Bill McCain, an employee of Red's Body Shop which is situated south across Denison from the two houses, did not see the man come back that direction after he had passed by going westbound. Thus, the man apparently never escaped beyond the one block area bordered by Center on the east, Denison on the south, and Main on the west. The shed in which Williams was hiding is situated in that block, and Bennett testified that neither he nor the other two officers who searched the area found any other person who fit the general description with which they were working.

▆▆▆ Though presence in the vicinity of the crime, even when coupled with flight, is not alone sufficient to sustain a conviction, *King v. State*, 638 S.W.2d 903 (Tex.Crim. App.1982), it does create an inference of guilt, which when combined with other evidence may be sufficient to sustain a conviction. *Clayton v. State*, 493 S.W.2d 526 (Tex.Crim.App.1973). Likewise, being found in possession of or near the tools used in the crime is a circumstance indicating guilt. Gibson and the Harlans testified that the knife introduced into evidence was similar to that carried by the man fleeing from the car. Ross testified that the knife introduced in evidence was about the length of the knife the attacker used. All of the State's eyewitnesses testified that the offender had a pillowcase or something on his head with which he was apparently trying to cover his identity, and Ross stated that her kidnapper had a pillowcase over his head with holes cut into it. The State also linked the pillowcase to Williams by evidence that it was damp when Bennett recovered it, that Williams was sweating profusely when he was arrested, and that no one else was in the shed at the time. The shed contained no bed or kitchen area which would be likely to normally contain a pillowcase or butcher knife.

The total combination of circumstances is sufficient to exclude any reasonable hypotheses other than Williams' guilt. To sustain a criminal conviction based on circumstantial evidence, it is not necessary that every fact point directly and independently to the guilt of the accused. The cumulative force of all incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Easley v. State*, 564 S.W.2d 742 (Tex.Crim.App. [Panel Op.] 1978).

The judgment is affirmed.