**Joe D. BRYAN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–89–275–CR.**

Court of Appeals of Texas,
Eastland.

Feb. 21, 1991.

Rehearing Overruled March 21, 1991.

Lynn W. Malone, Charles M. McDonald, McDonald, Harmon & Malone, Waco, for appellant.

Andy McMullen, Dist. Atty., Hamilton, Garry Lewellen, McMillan & Lewellen, Stephenville, for appellee.

## OPINION

DICKENSON, Justice.

The jury convicted Joe D. Bryan of murder[1] and assessed his punishment[2] at confinement for 99 years and a fine of $10,000. We affirm.[3]

The jury found that appellant was guilty of murder, on or about October 15, 1985, in Bosque County when he "did then and there intentionally and knowingly cause the death of an individual, Mickey Bryan [his wife], by shooting her with a firearm."

### Points of Error

Appellant presents five points of error. First, he argues that the evidence is insufficient. Next, he argues that the trial court erred in overruling his objection to the special prosecutor's jury argument on the ground that it "commented upon appellant's failure to testify." Finally, he argues in three points that the trial court erred in permitting the State to read into evidence his testimony from the prior trial because: (Point Three) it "contained numerous prejudicial statements by the prosecutor"; (Point Four) it "constituted an improper attempt to prove bad character" when appellant's character was not in issue; and (Point Five) its cumulative effect "was such as to deprive him of a fair trial."

1. TEX.PENAL CODE ANN. § 19.02 (Vernon 1989) defines the offense and declares it to be a felony of the first degree.

2. TEX.PENAL CODE ANN. § 12.32 (Vernon Supp.1991) provides that a person convicted of a felony of the first degree shall be punished by confinement for life or for any term of not less than five nor more than 99 years. An optional fine of not more than $10,000 may be assessed in addition to imprisonment.

3. Appellant was originally convicted of this offense in Bosque County by a jury which assessed punishment at confinement for 99 years and a $10,000 fine. That conviction was reversed by the 10th Court of Appeals because the trial court erred in refusing to allow appellant "the right to reopen" before jury argument for rebuttal testimony. The Waco Court held there was sufficient evidence to support the verdict. *Bryan v. State*, No. 10-86-148-CR (Tex.App.–Waco 1988, pet'n ref'd). After remand, venue was changed to Comanche County pursuant to TEX.CODE CRIM.PRO.ANN. art. 31.03 (Vernon 1989).

## Sufficiency of Evidence

The conviction in this case is based upon circumstantial evidence. The rules of appellate review are the same in both direct evidence and circumstantial evidence cases: an appellate court views the evidence in the light most favorable to the jury's verdict; and the evidence is not sufficient unless it is enough to convince a rational fact finder, beyond a reasonable doubt, that the defendant is guilty of every element of the offense. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234 (Tex.Cr.App.1989); *Houston v. State,* 663 S.W.2d 455 (Tex.Cr.App.1984). A conviction based upon circumstantial evidence cannot be affirmed unless the proof excludes every other *reasonable* hypothesis except the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190 at 195 (Tex. Cr.App.1984).

We need not discuss all of the evidence from this lengthy trial, but we will summarize enough pertinent testimony to show that it was sufficient to exclude every reasonable hypothesis except appellant's guilt. Appellant was the principal of the only high school in the town of Clifton, and his wife was a teacher in the elementary school. They had been married for sixteen years, and there was no outward indication of any trouble in their marriage. They did not have any children, and they lived by themselves in a house on the edge of town. There were snakes in the area, and they kept a .357 magnum pistol loaded with "snake-shot" in their bedroom.

Appellant drove from their home in Clifton to the Hyatt Regency Hotel in Austin on the afternoon of October 13, 1985, to attend the annual meeting of the Texas Association of Secondary School Principals (TASSP). The telephone records confirm appellant's statement that he called his wife long distance from the hotel at 9:00 p.m. on the evening of October 14. Her body was found the next morning when she did not show up at the elementary school to teach her class. The alarm clock was set for 6:00 a.m., and it had not been turned off. Appellant's wife had been shot three times in the head and once in the stomach. The coroner said that all four wounds indicated that she had been shot at very close range. There was a lot of blood all over the room, and the coroner expressed the opinion that her assailant would have been spattered with her blood. The wounds were caused by small shot such as the ones which would have been fired by the .357 magnum pistol which was missing from their bedroom. The blood spatters on the bedroom ceiling and on the ceiling fan indicated that the fan was not operating when the victim was shot and that the fan was turned on after it was spattered with blood. A pair of appellant's underwear was found in the bathroom trash basket, and the underwear contained moist semen which matched the semen sample secured from appellant. There were no traces of semen in any of the victim's bodily cavities.

Appellant had no alibi for his whereabouts at the time of his wife's shooting. The State's theory of the case was that he slipped out of the hotel, drove home, let himself into the house with his key, shot his wife with the gun which was kept by their bed, cleaned himself up after getting her blood all over himself, changed clothes and shoes, disposed of the gun and the missing jewelry, drove back to his hotel room in Austin, cleaned up, and went to the morning meeting at the TASSP convention.

Appellant appeared to cooperate with the investigating officers immediately after his wife's death. He indicated that some jewelry and about $1,000 in cash which they kept in their room was missing. While appellant's brother-in-law was using the car which appellant had driven to Austin, the brother-in-law discovered a bloody flashlight in the trunk of the car and reported that finding to the Texas Ranger who was in charge of the investigation. The Ranger secured a search warrant and examined appellant's car very carefully. There was no money in the trunk. Before he heard that the Ranger had searched his car, appellant told the local police that he had found the missing money in the trunk of his car. The blood on the flashlight which was found in the trunk of appellant's

car matched decedent's blood, and there were small pieces of plastic on the flashlight which matched the small pieces of plastic which were found in the body and which came from the shells containing the "snake-shot."

Appellant then claimed that a Hyatt Regency employee named "Jack Shaw" asked him to help with the investigation of the maids at the hotel by leaving his keys and some valuables on the dresser to see if the maid would take them. An investigation at the Hyatt Regency indicated that they did not have a security employee named "Jack Shaw" and that they would never ask a guest to participate in any investigation of hotel employees. Appellant suggested that someone must have taken his keys, made copies of them, used the duplicate car key in order to drive it from Austin to Clifton, used the duplicate of his house key to let himself into the house, murdered his wife, put the bloody flashlight into the car to frame him, and then returned the car to the parking lot where he had left it. We think the jury was free to reject this theory as being an unreasonable hypothesis.

There was no evidence of forced entry at appellant's home, and his wife's robe was folded on the foot of her bed. She was wearing a nightgown, and the testimony indicates that she was a modest woman who would not have answered the doorbell in the nightgown without putting on her robe. Appellant did not report that any of his shirts, pants, or shoes were missing. There was enough blood in the room that the officers expressed the opinion that the killer had to clean up and change clothes; otherwise, there would have been traces of blood in the hallway leading to the unlocked door. The evidence is sufficient to support the jury's finding of guilt. Appellant did not have a reasonable explanation for the bloody flashlight which was found in the trunk of his car, and the money which he claimed had been in the trunk of his car was not there when the car was searched. The first point of error is overruled.

## Comment on Failure to Testify

■ The elected district attorney made the opening argument for the State, two of appellant's trial counsel made their arguments to the jury, and the special prosecutor then made the State's closing argument. We will quote the portion which relates to the second point of error:

From the stories this man told, from the statements he wrote out, from his only explanation offered of Jack Shaw, from the gun story and I don't knowing (sic) what kind of gun it was, look at the whole thing and ask yourselves how many killers are going to pick this house out at random, this little girl out at random, blow her away four times and turn the fan on and clean up? Where does all of this point? (Indicating) Right there to the corner.

And the lawyer says you have been looking at him. I ask each one of you, have you ever got him to look at you back? Has he ever looked you in the eye? I don't know why, but I know where all of the evidence points to, the credible evidence. I know where the physical evidence points to. It ain't pointing at Bud Saunders [former FBI agent]. *It ain't pointing at Charlie Blue* [appellant's brother-in-law]. You look at his credibility—

MR. MALONE: I object to that. He has pointed to the witness stand directly. I want the record to reflect that he has looked at the jury. He has said you can determine his credibility and he has pointed to the witness stand. That is a direct comment on the Defendant's failure to testify.

MR. LEWELLEN: *I'm talking about Charlie Blue.*

MR. MALONE: I object to it. I object to him now attempting to correct the matter. He was pointing at the Defendant immediately before he did that and I want the record to reflect that he pointed to the Defendant immediately before he turned and pointed to the witness stand.

THE COURT: The record will reflect what it reflects.

\* \* \* \* \* \*

MR. MALONE: Did you rule on my objection.

THE COURT: Overruled. (Emphasis added)

This record does not show a "direct comment" on appellant's failure to testify, nor does it show an "indirect comment" which was of "such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify." See and compare *Owen v. State,* 656 S.W.2d 458 at 459 (Tex.Cr.App.1983). The special prosecutor was defending the credibility of the two witnesses who first saw the bloody flashlight in appellant's car and was replying to appellant's counsel's suggestion that these men might have put the flashlight in the trunk of appellant's car before reporting their finding to the Texas Ranger.

### Testimony from Prior Trial

■ Appellant testified in his former trial, but he exercised his right not to testify in the present trial. The State made an offer of proof in the absence of the jury, and appellant's counsel made numerous objections. Part of the objections was satisfied by the State's agreement not to offer portions of the prior testimony, and part was satisfied by the trial court's rulings on other portions of the prior testimony. The trial court did permit the State to introduce approximately 22 pages of the direct and 171 pages of the cross-examination testimony which appellant gave in the prior trial. Without waiving his objections, appellant's counsel then introduced 40 pages of his direct examination testimony. The official court reporter read the questions and answers to the jury while a substitute court reporter transcribed these proceedings. The jury was not told of the prior trial and was not given any explanation of why appellant's testimony was read to them by the official court reporter.

Appellant's final three points of error contend that the trial court reversibly erred by permitting the jury to hear this testimony from the prior trial. We disagree. The Court of Criminal Appeals held in *Chavez v. State,* 508 S.W.2d 384 at 386 (Tex.Cr. App.1974):

[A]n accused, taking the stand on his own behalf, waives the privilege [of refusing to testify], so that *his testimony may be used against him at a subsequent trial of the same case.* (Emphasis added)

We realize that *Chavez* was criticized in a concurring opinion by Judge Teague, joined by Judge Miller, in *Nelson v. State,* 765 S.W.2d 401 at 409 (Tex.Cr.App.1989). The majority held that *Nelson* was distinguishable from *Chavez* because the jury had not heard the testimony which the State sought to introduce at the punishment phase of trial. In our case, appellant's testimony was heard by the prior jury, and the offer was made during the first phase of trial.

■ Much of this testimony was not hearsay under TEX.R.CRIM.EVID. 801(d) because it was not "offered in evidence to prove the truth of the matter asserted," but was offered to prove that appellant had given untrue explanations for events surrounding his wife's death. Moreover, all of appellant's testimony from the prior trial fits within the specific definition of "Statements Which Are Not Hearsay."[4] Even if the prior testimony were to be treated as "hearsay," it would still have been admissible as an exception to the "Hearsay Rule."[5] The questions as well as the answers are admissible under TEX.R.CRIM. EVID. 107 (Rule of Optional Completeness) which provides in part that:

When a ... conversation ... or recorded statement is given in evidence, any other ... declaration ... which is necessary to make it fully understood ... may also be given in evidence.

---

**4.** TEX.R.CRIM.EVID. 801(e)(2)(A) defines as "not hearsay" a statement offered against a party which is "his own statement in either his individual or representative capacity."

**5.** TEX.R.CRIM.EVID. 804 covers the situation where the declarant is exempt from testifying

because of privilege and the testimony was given "at another hearing of the same or a different proceeding," if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony.

The prior testimony was relevant under TEX.R.CRIM.EVID. 402 to show that appellant had given untrue explanations for events surrounding his wife's death, and the trial court had discretion under TEX.R. CRIM.EVID. 403 to decide that its relevance was not substantially outweighed by the danger of *unfair* prejudice.

We hold that the trial court did not reversibly err in permitting the reading of appellant's prior testimony from the prior trial, including the questions which contained "numerous prejudicial statements by the prosecutor." The third point of error is overruled. We hold that the prior testimony was not offered "to prove bad character on the part of Appellant" and that it was relevant to prove appellant's attempted explanations of the incriminating circumstances surrounding his wife's death. The fourth point of error is overruled. We also hold that the testimony from his prior trial which was read to the present jury did not "deprive him of a fair trial." The fifth point of error is overruled.

The judgment of the trial court is affirmed.