

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-121-CR**

ALEXANDER LUIS LOPEZ                                                      APPELLANT
A/K/A ALEXANDER L. LOPEZ

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury convicted Appellant Alexander Luis Lopez a/k/a Alexander L. Lopez of aggravated assault with a deadly weapon, and the trial court sentenced him to eight years' confinement. In one point, Lopez argues that the evidence is legally and factually insufficient to prove identity. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On Thanksgiving Day of 2007, members of the Araujo family gathered for dinner at Gloria Araujo's house. In addition to Gloria and a number of young children, those in attendance included Erica Araujo, Gloria's daughter; Maria Elena Araujo ("Maria E."), Gloria's sister; Maria Roxanne Araujo ("Roxanne"), Elsie Araujo, and Maria Castillo ("Maria C."), Maria E.'s daughters; and Laneilton Perry, Erica's boyfriend.

About the same time, Lopez; Edgar Reza, Roxanne's ex-boyfriend and the father of her two children; and Jesse Muniz met for drinks. Roxanne and Reza had planned to meet that day so that Roxanne could visit with her son, who was with Reza. Roxanne called Reza several times between 8:00 p.m. and 11:00 p.m. to arrange a meeting, but she never managed to speak with Reza. Instead, Roxanne spoke with Mody Oviedo, Reza's girlfriend at the time. Oviedo told Roxanne that she had Roxanne's son and to not call that telephone anymore.

Roughly around 1:00 a.m., Lopez, Reza, Muniz, and Oviedo, all intoxicated, went to Gloria's house. Reza "banged" on the front door and asked for Roxanne, Roxanne went outside and onto the porch with Reza, Maria E. and Maria C. followed Roxanne outside, and Roxanne and Reza started arguing. When Erica came outside in an attempt to "get in between the argument" between Roxanne and Reza, Lopez punched Erica in the face. Reza grabbed Roxanne by the hair and dragged her off of the porch and towards the front of the yard while punching her ribs. When

2

Maria E. told Reza to stop and attempted to "grab [Roxanne] back," Reza began hitting her too, tackling her to the ground and punching her "all over." Maria E. heard Muniz tell Reza to "shoot the bitch," and Maria E. heard a "pop," felt a burning sensation on her side, and realized that Reza had shot her. Around the same time that Reza and Maria E. struggled on the ground, Muniz ran up to Roxanne and stabbed her. Muniz also stabbed Maria E. in her back after Reza had shot her.

Meanwhile, Gloria was inside her house when she heard several gunshots. She retrieved her unloaded gun from her bedroom and headed outside, carrying her gun in one hand and a clip in the other. Once outside, Gloria "saw chaos. I seen men hurting my family, my daughter, my nieces." After trying to pull Reza off of Roxanne, whom Reza was beating, Gloria tried to load her gun, but Lopez took the gun from her. Gloria ended up on the ground somehow, and Lopez pointed the gun at her head and pulled the trigger, but the gun did not fire because it was unloaded. Lopez then struck, or "pistol-whipped," Gloria's head with the gun, giving her a gash on her head.

Perry also became involved in the melee after he saw Lopez punch Erica. He pushed Lopez, punched him in the forehead, and chased him into the street. Perry heard a gunshot and ran back towards Gloria's house, where he came face to face with Reza. Perry "slammed" Reza and was on top of him when someone hit Perry's right eye from behind with a bottle. After taking a "barrage" of kicks and punches to

3

his head and back, Perry was stabbed in the stomach by Reza. "Everyone" ran off thereafter.

The State indicted Lopez for attempted murder and aggravated assault with a deadly weapon. The aggravated assault count charged that Lopez "did intentionally or knowingly cause bodily injury to Gloria Araujo by striking her with a firearm and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: a firearm." The jury acquitted Lopez of attempted murder but convicted him of aggravated assault. This appeal followed.

### III. EVIDENTIARY SUFFICIENCY—IDENTITY

In his only point, Lopez argues that the evidence is legally and factually insufficient to prove that he committed aggravated assault against Gloria. He contends that "[t]he evidence in the instant case is completely confused and conflicted as to the identity of the person who hit [Gloria] with the gun."

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789;

4

*Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204

S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In a criminal trial, the State must prove that the accused was the perpetrator, and the accused stands innocent before the court until his identity is established beyond a reasonable doubt. *Rice v. State*, 801 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd). Therefore, identification of the defendant as the person who committed the offense charged is part of the State's burden of proof beyond a reasonable doubt. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984). Identity can be established by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

Here, several witnesses identified Lopez as the person who struck Gloria on her head with a gun. Erica testified that Lopez hit Gloria in the head with Gloria's gun after he had pointed the gun at Gloria and pulled the trigger. Maria C. testified

6

that Lopez "snatched" Gloria's gun from her and that he "pistol-whipped" her with the gun after he had pointed it at her and pulled the trigger. And Gloria identified Lopez in open court as the person who struck her with her gun.[2] Further, Maria E. testified that the person who struck Gloria was wearing a plaid shirt, and Roxanne testified that Lopez was wearing a plaid overshirt that night. Examining the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Lopez committed aggravated assault of Gloria while using or exhibiting a gun. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Accordingly, the evidence is legally sufficient to show that Lopez committed aggravated assault.

Lopez argues that the evidence is factually insufficient to show that he committed aggravated assault because (1) "[t]he testimony of the witnesses was so conflicted and confused as to be wholly unreliable and insufficient," (2) Gloria did not identify him in a photographic spread as the person who assaulted her, (3) Ernesto Baez, the nephew of Gloria's neighbor, testified that he saw a man point a gun at Gloria but that he did not see that man in the courtroom, (4) Perry did not see Lopez do anything to Gloria, and (5) Reza, unlike the other witnesses, testified that he saw Lopez fire two gunshots at a woman who was lying on the ground.

The evidence demonstrates that Gloria failed to identify Lopez in a photographic spread that she viewed after the incident but before going to the

---

[2] The strike to Gloria's head caused her pain and left an open wound.

7

hospital that night, instead identifying another person, but she did identify Lopez at trial as the person who assaulted her, and several other witnesses who testified at trial unequivocally identified Lopez as the person who assaulted Gloria. *See Grayson v. State*, 82 S.W.3d 357, 359 (Tex. App.—Austin 2001, no pet.) (holding evidence factually sufficient to support conviction for aggravated assault when complainant was unable to identify defendant as the shooter but complainant's companion identified defendant). Baez testified that he did not see the person who pointed the gun at Gloria in the courtroom, but he also explained that he was not able to get a good look at the person's face. Perry testified that he did not see Lopez strike Gloria with the gun, but he explained that he did not see Lopez fighting with anyone because he himself was "busy" fighting and that he never even saw Gloria outside of her house. And while Reza testified that he saw Lopez fire two gunshots at a woman who was lying on the ground, he was unable to identify the woman.

Each witness's testimony with regard to the totality of the events that occurred at Gloria's house varied to a certain extent because each witness participated in and observed those events from a different perspective. This, however, does not in and of itself render the evidence that Lopez struck Gloria on her head with a gun "unreliable and insufficient." *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (reasoning that some inaccuracies in a witness's description do not automatically render the evidence insufficient and that reconciliation of conflicts and

8

contradictions in the evidence is within the province of the jury). The jury sat as the judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony and resolved any conflicts in the evidence regarding the issue of identity in favor of the State. *See Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (reasoning that jury's decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State). Accordingly, examining the evidence in a neutral light, favoring neither party, we hold that the evidence supporting Lopez's conviction for aggravated assault is not so weak that the jury's determination is clearly wrong and manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. The evidence is factually sufficient to show that Lopez committed aggravated assault. We overrule Lopez's only point.

## IV. CONCLUSION

Having overruled Lopez's sole point, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 6, 2010