**Opinion issued November 21, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00505-CR

————————————

**DONALD D. BECKETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1462320**

## MEMORANDUM OPINION

A jury convicted appellant, Donald Beckett, of murder and the trial court

assessed his punishment at 50 years' confinement. In three related issues, appellant

contends that the evidence is legally and factually insufficient to support his conviction. We affirm.

## BACKGROUND

On March 3, 2015, the complainant, Isaac Tandoh, was waiting to get his hair cut at the Chop Shop barbershop when a fight broke out in the parking lot. Tandoh's barber, Shannon Miller, went outside to break up the situation. Miller, a member of the Black Disciples gang, knew both of the men involved in the altercation. Leon Dupre Whiting, who was holding a gun, was a long-time friend of Miller, and Hasan Matthews was a fellow Black Disciples gang member. Miller stood in front of Matthews in an effort to diffuse the situation.

As a result of Miller's intervention, Whiting began apologizing and Matthews left the scene. Miller then returned to the barbershop and resumed cutting Tandoh's hair. Whiting continued walking around the barbershop and apologizing to Miller. While Miller was cutting Tahdoh's hair, a man entered the barbershop and began shooting and then left the premises when his weapon would not fire anymore. As a result of the shooting, Miller was shot in the ankle, Whiting was shot in the abdomen, and Tandoh lay dead on the floor.

When first questioned by police, Miller denied knowing the shooter. Several days later, however, he gave a photograph of appellant to police and identified

2

appellant, a man he knew from his gang as "Hitman," as the shooter. He later identified appellant from a photograph line-up also. Appellant was soon arrested.

During the investigation, the police learned that appellant's wife, Tanesha O'Neal, owned a red Suburban. Photographs of the crime scene showed a red Suburban that matched the vehicle owned by appellant's wife. Miller also testified that appellant was known to drive a red Suburban.

Police also linked appellant to the crime scene by showing that the phone that he used on the night of the murder was accessing a cell tower that serviced the scene of the crime. The same cell phone tower would not have been used to service calls from appellant's phone if he had been at his sister's apartment, as he claimed in his alibi.[1] Records of the cell phone appellant used also showed that he received a call from Matthews, the fellow Black Disciples gang member involved in the parking lot altercation, at around 7:00 p.m., before the murder, and that appellant made a call to Matthews at about 7:40 p.m., after the murder. Phone records also showed that he and his wife spoke on the phone, even though they testified that they were together at his sister's birthday party the entire time.

---

[1] Appellant testified that he was not at the barbershop that night, but was at a birthday party for his sister at her apartment. His wife, sister, and her husband supported his alibi. Although he told police, when questioned, that he drove the red Suburban to the birthday party, at trial he testified that he rode with his mother.

3

At trial, Miller, the barber, testified that he decided to tell the police about appellant's involvement in the shooting because he and Tandoh, an innocent bystander, had been shot. He admitted that had Whiting been the only victim, he probably would not have said anything to police. He explained that Whiting had disrespected the Black Disciples by confronting Matthews in the parking lot with a gun. Essentially, the State's theory of the case was that someone in the Black Disciples—likely Matthews—had called the gang's "Hitman" to take retribution on Whiting for disrespecting Matthews, and that, in exacting that retribution, appellant shot not only Whiting, but also Miller and Tandoh.

At trial, the State also presented recordings of jailhouse telephone calls that appellant made. During one call, someone told appellant that "this wouldn't have happened if people wouldn't have called you up there." The caller further stated, "[T]hey just told Hitman to do this and he threw away his life." Appellant stopped the caller from further comments with an admonition that the calls were being recorded. In another phone call from the jail, appellant apologized to another of the barbers, although he claimed that the apology was related to money that he owed the barber, not the shooting.

4

**SUFFICIENCY OF THE EVIDENCE**

In his first issue, appellant challenges the sufficiency of the evidence to identify him as the perpetrator, arguing that "there was at best a mere modicum of evidence to support a conclusion that Appellant was the shooter."

*Standard of Review*

In reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals determines whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We measure the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. On appeal, we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We review factual-sufficiency-of-the-evidence

5

challenges under the same appellate standard of review as that for legal sufficiency challenges. *See Brooks*, 323 S.W.3d at 912–13, 917–18, 922–24, 926–28.

*Sufficiency-of-the-Evidence Review*

The State must prove beyond a reasonable doubt that the defendant is the person who committed the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984), overruled on other grounds by *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991). Identity may be proved by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

Here, the State presented both direct and circumstantial evidence of appellant's guilt. First, Miller identified appellant, a man he knew, as the shooter. He also identified appellant from a photographic line-up. Miller's identification is sufficient to support appellant's conviction for murder. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (holding testimony of one eyewitness is sufficient to support a jury's verdict); *Walker v. State*, 180 S.W.3d 829, 832–33 (Tex. App.— Houston [14th Dist.] 2005, pet. ref'd) (holding same).

However, there was also circumstantial evidence of appellant's identity as the shooter. Appellant was known to drive a red Suburban; his wife owned a red Suburban. A red Suburban matching that owned by O'Neal was photographed in the parking lot the night of the murder.

6

Appellant claimed to be at his sister's apartment for a birthday party the night of the murder. Phone records showed that if he were at his sister's apartment, as he claimed, the cell phone tower that serviced the calls he received and made that night would not have been involved. Also, cell phone records showed that, just before the murder, appellant received a phone call from the fellow gang member, Matthews, who had been involved in the earlier parking lot altercation. Shortly after the murder, appellant made a phone call to Matthews. And, in the jailhouse conversation appellant had indicated that the caller believed that "[the shooting] wouldn't have happened if people wouldn't have called you up there."

From this direct evidence—Miller's identification—and circumstantial evidence regarding the cell phone records, red Suburban, and jailhouse phone calls, the jury could have concluded beyond a reasonable doubt that appellant was the person who shot Tandoh. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Accordingly, we overrule appellant's first issue.

**Factual Sufficiency**

In issues two and three, appellant contends that:

This Court has the authority under the Texas Constitution to conduct a factual sufficiency review by weighing the evidence in a neutral light, and Appellant has a Constitutional right to such review[; and]

[t]he state appellate courts deny meaningful review in criminal appeals by misapplication of *Jackson v. Virginia* to factual sufficiency review.

7

Because both issues request that we conduct a factual sufficiency review, we address them together.

Appellant acknowledges *Brooks v. State*, in which the Court of Criminal Appeals discontinued factual sufficiency review, holding that the standard of review established in *Jackson v. Virginia* applied to all sufficiency challenges. *See Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2788–89; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality opinion). Appellant argues that *Brooks* was wrongly decided, citing a provision of the Texas Constitution stating that the decisions of the courts of appeals are "conclusive" on all questions of fact. TEX. CONST. art. V, § 6(a). He argues applying the *Jackson* standard to his factual sufficiency challenge denies him the due process guaranteed to him by the federal constitution. See U.S. CONST. amend. XIV, § 1.

This Court considered and rejected appellant's arguments in *Kiffe v. State*, in 361 S.W.3d 104, 109–10 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also Cozart v. State*, Nos. 01-15-01007-CR and 01-15-01008-CR, 2017 WL 3910696 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet) (mem. op., not designated for publication), *Tan v. State*, No. 01-15-00511-CR, 2016 WL 3542255, at *3, (Tex. App.—Houston [1st Dist.] June 28, 2016, pet. ref'd) (mem. op., not designated for publication). In *Kiffe*, this Court explained that, while the intermediate appellate

8

courts have final jurisdiction over all questions of fact, the applicable standard of review is a question of law that is determined by Texas Court of Criminal Appeals precedent. *Id.* Therefore, we apply the *Jackson* standard to factual insufficiency claims. *See Martinez v. State*, 327 S.W.3d 727, 730 (Tex. Crim. App. 2010); *Brooks*, 323 S.W.3d at 912; *Kiffe*, 361 S.W.3d at 109–10.

Having determined that there is sufficient evidence under the *Jackson* standard of review, and declining to conduct a separate factual sufficiency review, we overrule issues two and three.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.

Do not publish.   TEX. R. APP. P. 47.2(b).

9