Tommy Virgil THOMAS, Appellant,

v.

The STATE of Texas, State.

No. 2–81–112–CR.

Court of Appeals of Texas,
Fort Worth.

May 11, 1983.

**410**

Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Joe C. Lockhart, Asst. Dist. Atty., Fort Worth, for appellee.

Before FENDER, C.J., and ASHWORTH and SPURLOCK, JJ.

## OPINION

ASHWORTH, Justice.

Tommy Virgil Thomas was convicted of burglary of a habitation and repetition of offense. His punishment was set at confinement in the Texas Department of Corrections for a term of not less than fifteen years nor more than ninety-nine years.

This court reversed the conviction on insufficiency of the evidence and remanded to the trial court with instructions to enter a judgment of acquittal. *Thomas v. State,* 635 S.W.2d 187 (Tex.App.—Fort Worth, 1982). Petition for discretionary review was granted and the Court of Criminal Appeals held the evidence was sufficient. *Thomas v. State,* 645 S.W.2d 798 (Tex.Cr. App.1983).

The case was reversed and remanded to this court for consideration of Thomas' other grounds of error.

We affirm.

Thomas presents six grounds of error. The first three complain of rulings pertaining to identification testimony:

    1. Admitting the in-court identification of appellant by Johnnie Mae Edwards.

    2. Admitting the testimony of a police officer, Pat Fritz, which bolstered the unimpeached in-court identification of Johnnie Mae Edwards.

    3. Admitting the testimony of another police officer, Bob Rea, which bolstered the in-court identification of Johnnie Mae Edwards.

Since they are all related to identification testimony, these first three grounds of error will be discussed together.

Johnnie Mae Edwards, a sixty-eight year old widow who lived alone, testified she

locked a padlock on her back door on August 30, 1979, and went to a convenience store to purchase a money order. She was gone a short time and upon her return she saw a small green car parked in her driveway. She went toward the back of the house and met a man who said, "I didn't find what I was looking for, so I got this." He had something in his hand that looked like a screwdriver. Edwards testified she recognized the man as Tommy Virgil Thomas by his voice, walk, face, and nose; that Thomas had grown up in her neighborhood, and she knew him and his parents. Edwards found that the padlock to the back door was gone, the door was open, and a mattress in a bedroom was thrown off almost on the floor and the pillows were thrown back. She called the police who conducted an investigation that day; Edwards did not advise them that day that Thomas had been on the property, later testifying on cross-examination that the reason she did not was because she was upset.

Pat Fritz, a police detective, testified that on September 2, 1979, he went to Edwards' home with pictures (mug shots) of five black males, explained to her that they were possible suspects, and that Edwards, without suggestion, picked out and positively identified the picture of Thomas as being the man on her property on the day in question. Edwards testified that when shown the pictures, she first picked the picture of another person as being that of Thomas.

Bob Rea, a deputy sheriff, testified concerning a lineup conducted prior to the trial. Edwards, two prosecutors, and appellant's attorney were present. Five black males, similar in height and weight were viewed by Edwards. Rea testified that after the viewing, and out of the presence of all, Edwards picked Thomas out of the lineup. Fritz testified that he brought the five mug shots previously viewed by Edwards to the lineup and Edwards had an opportunity to view them prior to the lineup.

■ We hold that the in-court identification of Thomas by Edwards was admissible.

She testified that she had known Thomas since he was a child, had lived in the same neighborhood, and recognized his voice, walk, face, and nose. This testimony was sufficient evidence for the court to conclude the in-court identification was independent of any pretrial procedures. *Turner v. State,* 614 S.W.2d 144 (Tex.Cr.App.1981). The fact that she may have first identified another picture as being that of Thomas on the occasion of the photo spread goes to the weight and not the admissibility of her testimony. *Garcia v. State,* 563 S.W.2d 925 (Tex.Cr.App.1978). The totality of the circumstances in the instant case is not so unnecessarily suggestive and conducive to irreparable mistaken identification that Thomas was denied due process under *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ Edwards was impeached on cross-examination through testimony that she saw Thomas for only a split second, that she had eye trouble, had to wear glasses, and had not seen appellant for some time. Her testimony in instances was confusing and unclear, testifying she was so upset when the police arrived on the day of the incident that she could not tell them that Thomas, the man she knew so well, was the man on the premises when she returned from the store, and first picking the picture of another man from the photo spread. Under these circumstances it was permissible for the State to bolster Edwards testimony. *Smith v. State,* 595 S.W.2d 120 (Tex.Cr.App. 1980).

Thomas complains of Bob Rea, deputy sheriff, testifying to bolster the in-court identification by Edwards. Rea conducted the lineup on the day of trial and his testimony is outlined above. The same principles apply to Rea's testimony as applied to Officer Fritz. Under all the circumstances, it was permissible for the State to bolster Edwards testimony. *Smith v. State, supra.* Appellant's first three grounds of error are overruled.

■ Appellant's fourth ground of error is directed at the overruling of his objection to

the State's argument, "The State can never prove specific intent, folks. We can't slice somebody's head off and say he has the intent to commit theft". The argument complained of is similar to that often advanced that specific intent is seldom capable of proof by direct evidence, and that there is no physical way to look inside a person's mind to determine if a specific intent exists. The choice of the words, "slice his head off" was inappropriate, but no harm has been shown from the argument. The argument was not a misstatement of the law according to the court's charge, and does not constitute reversible error. *Givens v. State,* 554 S.W.2d 199 (Tex.Cr.App.1977). Appellant's fourth ground of error is overruled.

Appellant's fifth ground of error alleges the court erred in overruling appellant's motion for a mistrial when the prosecutor said, "I will call a newspaper if you give this man a sentence that will make every other burglar and thief in Tarrant County sit up and take notice it will be on the front page". This argument was presented in response to the following argument by appellant's attorney during the punishment phase of the trial. "Mr. Linebarger will argue that the community out here is demanding a long time in the penitentiary and that is not so. He will call upon you to think what might be said in the newspapers about this case. This case, I don't think, will even get to Page 29 in the newspapers, if even that".

■ Even though the prosecutor's argument was invited and in response to appellant's argument, it was still not a proper form of a plea for law enforcement. The court properly sustained appellant's objection to the argument and instructed the jury to disregard anything that is not in evidence. This instruction is sufficient to cure any error in the argument so long as such argument is not calculated to inflame the minds of the jurors to the prejudice of the appellant, and which is not extreme or manifestly improper, injects new facts or violate mandatory statutes. *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980); *Basal-*

*dua v. State,* 481 S.W.2d 851 (Tex.Cr.App. 1972). Appellant's fifth ground of error is overruled.

■ Appellant's sixth ground of error complains of the court's failure to declare a mistrial after Edwards gave an unresponsive answer, "No, because I hadn't seen him since he had been in prison. I hadn't seen him since he came out". Edwards had made a similar unresponsive answer earlier in her testimony which was not objected to:

Q. Before August 30th of 1979 did Tommy Virgil Thomas ever visit in your home?

A. That is the first time I had seen him since he came from prison.

In a motion for new trial, appellant's attorney stated that he had not heard this answer, and if he had, he would have objected. We do not question that objection would have been made if the answer had been heard, especially in view of the objection when the statement in essence was repeated. The failure to object in the first instance will not be considered as a waiver of error. When the statement was made the second time, appellant's attorney promptly objected, the objection was sustained, a request was made that the jury be instructed not to consider it for any purpose whatsoever, and the court stated, "The jury will not consider that answer for any purpose". Appellant's attorney then moved for a mistrial which was overruled. In view of the court's instruction, there is no reversible error. *Fisher v. State,* 493 S.W.2d 841 (Tex. Cr.App.1973). Appellant's sixth ground of error is overruled.

Judgment is affirmed.