David Scott MABRA, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–98–0193–CR.

Court of Appeals of Texas,
Amarillo.

July 9, 1999.

Arnold N. Miller, Amarillo, for appellant.

Rebecca King, Clarence E. Walker, Dist. Atty's Office, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

PHIL JOHNSON, Justice.

David Scott Mabra was convicted by a jury of burglary of a habitation. After pleading true to the enhancement paragraph, he was sentenced by the trial court to 15 years confinement. By three points of error, appellant contends that the evidence in support of his conviction was insufficient as a matter of law, that the court erred in not granting his motion for new trial because the evidence was insufficient as a matter of law to establish guilt without a parties charge, and that the trial court erred in denying his motion to dis-

miss because his constitutional right to a speedy trial was violated. We affirm.

## FACTUAL BACKGROUND

On the morning of Sunday, April 4, 1993, someone entered the home of Jimmy and Sharon McFarland while the McFarlands were not at home. Mrs. McFarland was at church. Mr. McFarland was out of town at a meeting. The break in was discovered when Mrs. McFarland returned home from church about 12:15 or 12:30 p.m. A locked door to the room where Mr. McFarland kept his collection of antique guns and knives was broken open and several pieces of the collection were taken. One bedspread was taken from the house in addition to the guns and knives. Otherwise, nothing was taken from either the interior or exterior of the house.

Mrs. Sherry Tevebaugh, a neighbor of the McFarlands, witnessed a 1970s-vintage Chevrolet Nova automobile in the McFarland's driveway on the morning of the burglary. She saw two men in the car. She also saw one of the men outside the car putting a "bundle" into the car. The man putting the bundle in the car then entered the passenger door of the car and the car drove away. Another neighbor, Adrian Cordova, also saw the car in the McFarland's driveway on the morning of the burglary. Adrian Cordova saw a man on the front porch of the McFarland house looking into a window. Cordova saw the man on the porch try to get into the McFarland house through the front door, then go around to the side of the house. Cordova was unable to see what occurred on the side of the house.

Shortly after the burglary was discovered, a description of the car seen at the McFarland home was broadcast to police departments in the area. On the afternoon of the burglary, Amarillo police officer Kuster stopped a 1971 Chrevolet Nova automobile based on the description of the vehicle seen at the McFarland residence. Appellant was driving the vehicle and Byron Dean Buchner was a passenger in the vehicle. Officer Kuster found nothing to warrant detention of appellant and Bu-

chner, although no search was made of the vehicle.

Based on the report of the Amarillo police department that appellant and Buchner were in a 1971 Chevrolet Nova on the afternoon of the burglary, photo spreads containing the pictures of appellant and Buchner were shown to the McFarland neighbors who witnessed the events of Sunday morning. Mrs. Tevebaugh identified the driver of the car as Byron Dean Buchner. She was unable to identify the passenger. Cordova identified the man he saw on the McFarland front porch as appellant. Following identification of the photographs of appellant and Buchner by the witnessses, appellant and Buchner were arrested and charged with the burglary.

Neither appellant nor Buchner were ever connected to the stolen property. The only parts of the gun and knife collection which were ever located were recovered by Mr. McFarland from a pawn shop. The person pawning the items was identified as a female with an Oklahoma driver's license. Neither Mrs. Tevebaugh nor Adrian Cordova saw anyone enter the McFarland house. Witness Cordova was eleven years old at the time of the burglary. He could not identify appellant by the time of trial. Cordova testified, however, that shortly after the burglary he picked appellant's picture out of a photo spread as being the man on the McFarland porch. Fingerprints of neither appellant nor Dean Buchner were identified at the scene of the burglary.

Appellant was indicted for the burglary on May 6, 1993. The first trial setting he received was for July 31, 1995. Although neither appellant nor the State requested a continuance, the case did not go to trial at the first setting. The next trial setting was not until March, 1998. Appellant's jury trial began on March 31, 1998. He was convicted.

## INSUFFICIENCY OF
## THE EVIDENCE

We consider appellant's first and second points of error together because both points assert that the evidence was legally insufficient to sustain his conviction as a principal actor in the burglary. By his first point of error, appellant contends that the trial court erred in failing to grant appellant's motion for directed verdict because the evidence was insufficient as a matter of law. By his second point of error appellant contends that the trial court erred in failing to grant a new trial because the evidence was legally insufficient to sustain his conviction without a parties charge to the jury.

■ A challenge to the trial court's ruling on a motion for an instructed verdict is actually a challenge to the legal sufficiency of the evidence to support the conviction. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990). The test for determining the legal sufficiency of the evidence is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ The elements of burglary of a habitation are 1) a person 2) without the effective consent of the owner 3) entering a habitation 4) with intent to commit felony or theft. Act of May 24, 1973, 63rd Leg., R.S., ch. 399 1973 Tex. Gen. Laws, 883, 926–27, amended by Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 30.02, 1993 Tex. Gen. Laws 3586, 3633 (current version at Tex. Penal Code Ann. § 30.02(a) (Vernon 1994)). Burglary can be proven by circumstantial evidence. *Gilbertson v. State,* 563 S.W.2d 606, 608 (Tex.Crim.App.1978); *Nelson v. State,* 905 S.W.2d 63, 64 (Tex.App.—Amarillo 1995, no pet.); *Price v. State,* 902 S.W.2d 677, 680 (Tex.App.—Amarillo 1995, no pet.) (Direct evidence that defendant entered home unnecessary where there was evi-dence that burglary occurred, defendant possessed some or all of stolen property, and defendant offered no reason for having the property). Mere presence of an accused at the scene of an offense is not alone sufficient to support a conviction; although it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant. *Johnson v. State,* 537 S.W.2d 16, 18 (Tex.Crim.App.1976).

Appellant relies on cases citing the above-noted principle of law that defendant's mere presence at the scene of a crime is not sufficient for conviction. He cites *Thomas v. State,* 635 S.W.2d 187 (Tex.App.—Fort Worth 1982) wherein the court of appeals reversed a conviction for burglary of a habitation. The *Thomas* court held that there was no evidence that the defendant entered the habitation which was burglarized. The court stated that defendant's presence at the scene with a screwdriver in his hand and his verbal statement to the habitation owner that "I didn't find what I wanted, so I took this [screwdriver]" was insufficient to support the jury's finding of guilty.

Appellant, however, does not address the subsequent history of the *Thomas* case. The Court of Criminal Appeals reversed the decision of the court of appeals. *Thomas v. State,* 645 S.W.2d 798 (Tex. Crim.App.1983). The Court of Criminal Appeals held that the record contained sufficient evidence in addition to defendant's presence at the scene of the crime to support the jury's finding of guilt. *Id.* at 800. Upon remand, the Ft. Worth Court of Appeals affirmed the conviction. *Thomas v. State,* 651 S.W.2d 409 (Tex. App.—Fort Worth 1983, pet. ref'd).

Appellant also relies on the cases of *Harris v. State,* 833 S.W.2d 535 (Tex. App.—Dallas 1992, pet. ref'd), and *Walker v. State,* 823 S.W.2d 247 (Tex.Crim.App. 1991). The standard used to determine the sufficiency of the evidence in both *Harris* and *Walker,* however, was different from the standard applicable to appellant's

case. The *Harris* and *Walker* courts measured the defendants' evidentiary challenges by reviewing the evidence to determine whether the evidence supported a reasonable hypothesis other than the defendant's guilt. *Harris,* 833 S.W.2d at 536; *Walker,* 823 S.W.2d at 249. As noted in the *Harris* opinion, *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991) changed the standard of review for cases tried after November 6, 1991. After *Geesa,* the State no longer was required to exclude every reasonable hypothesis for the crime except that of the accused's guilt. *Harris,* 833 S.W.2d at 536 n. 1. The *Geesa* standard did not apply to review of the *Harris* and *Walker* cases; *Geesa* governs our review of appellant's case. Further, in both *Harris* and *Walker,* the State was unable to offer proof of which of two defendants entered the burglarized building. Appellant's case differs factually from both *Harris* and *Walker.*

*Martinez v. State,* 715 S.W.2d 725 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd), is one of the cases cited in the State's brief. In *Martinez,* witnesses heard a burglar alarm sound from a house and witnessed a car with two Mexican–American males drive away from the house and run two stop signs and a red light. Witnesses were able to record the license plate number of the fleeing vehicle. The vehicle was ultimately traced to the defendant. One of the witnesses was able to identify the defendant as the driver of the fleeing car. A french door of the complainant's house was broken and the house had been burglarized. The Court of Appeals found sufficient evidence to support a burglary conviction.

▆ We deem *Martinez* instructive. In *Martinez,* the attention of the witnesses was attracted by the sound of a burglar alarm. The witnesses were able to 1) identify the defendant and his vehicle, 2) fleeing, 3) from the scene of a house that turned out to have been burglarized, 4) immediately after the burglar alarm sounded. In the case before us, the time of the burglary was determined to be with-

in a short time frame: the time that Ms. McFarland was at church on Sunday morning. Eyewitnesses saw two men at the McFarland house during the time that the burglary could have been committed. No proof was offered that any other persons or vehicles were seen at the McFarland house while Ms. McFarland was gone to church. Appellant was identified as one of the men at the house, and further identified as looking into a window of the house and trying to enter the front door. Appellant's co-defendant Buchner was with appellant when Amarillo police officer Kuster stopped a vehicle similar in description to the vehicle observed at the McFarland residence. Buchner was identified as the driver of the vehicle at the McFarland residence on the morning of the crime. The same eyewitness who identified Buchner saw the other man present at the McFarland house put a bundle into the car driven by Buchner, then the car departed. Nothing was missing from the outside of the residence and only one bedspread and the missing guns and knives were taken from the inside of the house. Whoever took the guns and knives broke through a locked interior door to get to the items. A purse and other items of personal property were undisturbed during the crime.

A rational trier of fact could have found against defendant on each element of burglary beyond a reasonable doubt. A rational trier of fact could have found beyond a reasonable doubt from the evidence and reasonable inferences and deductions from the evidence that: 1) appellant and Buchner were the only persons present at the McFarland house at the time the crime was committed; 2) because nothing else in the house was taken, whoever broke into the house did so intending to take the guns and knives; 3) appellant, being present at the house, trying to enter the front door and not being the driver of the car, was the person who entered the house, took the missing guns and knives, bundled them up in a bedspread, and put the bundle in the car in which appellant and Buchner

then departed and which they were later driving when stopped by officer Kuster.

Appellant's mere presence at the scene of the crime does not prove his involvement in the crime. The evidence in this case, however, shows more than appellant's merely being at the scene of the crime. The evidence is legally sufficient to support appellant's conviction as a primary actor. Therefore, the court did not err in failing to give a parties charge to the jury and did not err in denying appellant's motion for new trial on the basis that the jury was not given a parties charge. We overrule appellant's first and second points of error.

## RIGHT TO SPEEDY TRIAL

By his third point of error, appellant asserts that the trial court erred in failing to grant his motion to dismiss for failure to grant a speedy trial pursuant to his rights under the United States and Texas Constitutions. Appellant claims that because it took five years to bring him to trial, the trial court should have granted the motion to dismiss citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Although the record is not clear as to the date appellant was arrested, the judgment shows that he was in custody on April 8, 1993. Counsel was appointed to represent appellant on April 14, 1993. On May 6, 1993, appellant was indicted for burglary of a habitation. On March 24, 1998, appellant filed a motion to dismiss for violation of his right to a speedy trial.

Appellant was the only witness to testify at the hearing on the motion to dismiss for failure to grant a speedy trial. The case had been set for trial once in July of 1995 and there was no documentation as to why it did not go to trial. The prosecutor speculated, on the record, that because of the trial court's docket in the three counties it covered, "apparently" March 31, 1998, was the first time the court was able to reach the case. The trial court commented, also on the record, that the court might have been involved in a capital murder case during July of 1995. The prose-

cutor and trial court both speculated that due to crowded dockets the case was not reached for trial for nearly five years. The State presented no evidence of the reason for the delay. After the hearing, the trial court overruled appellant's motion. Appellant's trial began on March 31, 1998, nearly five years after the date of the offense and the date of indictment.

The Sixth Amendment to the United States Constitution guarantees the right to a speedy trial. *Barker*, 407 U.S. at 515, 92 S.Ct. 2182. The Texas Constitution also guarantees the right to a speedy trial. TEX. CONST. art. I, § 10. The test for whether speedy trial rights have been violated under the federal and state constitutions is the same. *See Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App.1985); *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.); *Floyd v. State*, 959 S.W.2d 706, 709 (Tex.App.—Fort Worth 1998, no pet.). The primary burden to bring a defendant to trial rests upon the State. *Barker*, 407 U.S. at 527, 92 S.Ct. 2182.

When reviewing the trial court's decision to grant or deny a defendant's claim that his right to a speedy trial has been violated, the appellate court must balance four factors: (1) the length of the delay, (2) reasons for the delay, (3) the defendant's assertion of the right, (4) and prejudice to the defendant resulting from the delay. *Id.* at 530, 92 S.Ct. 2182. No one factor is determinative of the result of our balancing process. *Id.* at 533, 92 S.Ct. 2182. With the foregoing in mind, we undertake review of the record to determine the validity of appellant's point of error. Our review of speedy trial claims is *de novo*. *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App.1997).

### (1). Length of Delay

Lengthy delay of a defendant's trial is a triggering mechanism for speedy trial analysis. When enough of a delay occurs, the delay becomes presumptively

prejudicial to the defendant and the courts undertake analysis of the factors described in *Barker.* *See Emery v. State,* 881 S.W.2d 702, 708 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). Although no specific length of time triggers a speedy trial analysis, some courts presume that a delay of eight months or longer is prejudicial. *See Harris v. State,* 827 S.W.2d 949, 956 (Tex. Crim.App.1992), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). The length of the delay is measured from the time the defendant is arrested or formally accused. *Id.* at 956 (*citing United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971)).

■ The burglary with which appellant was charged took place on April 4, 1993. Appellant was in jail from April 8, 1993 until May 14, 1993. Appellant was tried beginning on March 31, 1998. A delay of nearly five years requires consideration of the other factors set out in *Barker.* *Harlan v. State,* 975 S.W.2d 387, 389 (Tex. App.—Tyler 1998, pet. ref'd). Further, a delay of five years under the record in this case weighs against the State.

### (2). Reason for Delay

■ The State has the initial burden of justifying a lengthy delay. *Emery,* 881 S.W.2d at 708. In light of a silent record, or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for the delay existed. *Turner v. State,* 545 S.W.2d 133, 137–38 (Tex.Crim.App.1976). Different reasons for the delay should be assigned different weights. A deliberate attempt to delay the trial in order to hamper the defense should weigh heavily against the State, while overcrowded dockets or negligence should weigh less heavily. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. "Neutral" reasons not attributable to conscious design of the State to delay trial still weigh against the State because the ultimate responsibility for such conditions rests with the State. *Id.*

■ Absent evidence of a reason for the delay, we presume no valid reason existed for the delay of appellant's trial. Even if we were to assume that the delay was caused by crowded dockets, that matter ultimately rests with the State. Accordingly, the record in this case weighs against the State as to the second *Barker* factor.

### (3). Assertion of Appellant's Right to Speedy Trial

■ A defendant who fails to demand a speedy trial does not forever waive the right. *Barker,* 407 U.S. at 528, 92 S.Ct. 2182. Nevertheless, a defendant's failure to demand a speedy trial can be a strong indication that defendant did not want one. *Id.* at 536, 92 S.Ct. 2182; *Harris,* 827 S.W.2d at 957; *Harlan,* 975 S.W.2d at 390. A defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may attenuate the strength of his claim. *Phillips v. State,* 650 S.W.2d 396, 401 (Tex. Crim.App.1983).

■ Appellant never moved for a trial setting or otherwise acted to bring the case to trial. On the other hand, appellant did nothing to delay the proceedings. The record does not show that either the State or appellant moved for continuance or otherwise sought to delay the trial when it was set in July, 1995. Appellant filed a motion for continuance in 1998, but that was just prior to trial and after his motion to dismiss for failure to grant a speedy trial had been denied. The trial court denied appellant's motion for continuance.

Appellant presented no evidence regarding his motive in failing to assert his right to speedy trial as opposed to requesting dismissal of the charges against him. However, appellant testified that by the summer of 1995, he had lost the evidence that would have been given by his grandparents who were "alibi witnesses." Yet appellant did not assert that his right to a speedy trial was violated until almost three years after he lost the last of the alleged

alibi testimony that would have come from his grandparents.[1]

■ The primary burden is on courts and prosecutors to assure that cases are brought to trial. *Barker*, 407 U.S. at 529, 92 S.Ct. 2182. Nevertheless, defendants have a burden to assert the right to a speedy trial if a trial is not forthcoming and *if* the defendant *desires* to go to trial. *Id.* at 528, 92 S.Ct. 2182. Appellant's failure to assert his right to a speedy trial weighs against him. The failure to request a trial setting or otherwise assert the right to go to trial after 1994 severely affects any claim by appellant that he really wanted a speedy trial. Appellant testified in the hearing on his motion to dismiss that Rene Vaughn, one potential alibi witness, committed suicide on July 4,1994. That left him with two more "alibi" witnesses: his grandmother and grandfather. Appellant testified further that his grandmother developed a serious illness in 1994 that impaired her brain functions and her ability to remember and testify on his behalf. He opined that she was incompetent due to her illness. According to appellant, she did not even know when her husband, appellant's other alibi witness, died (he died on July 2, 1995). According to appellant, that left him, as of early 1995, with his grandfather as his only remaining alibi witness. Appellant still filed no request for a speedy trial or any kind of request for trial. Nor does the record reflect any claim or protest filed or presented to the court until just prior to the trial in 1998 when the Motion to Dismiss was filed on the morning of pretrial hearings in the case.

The filing of a motion to dismiss when the case was set for trial in 1998, without a prior attempt to seek a trial setting or to make some overt, record attempt to assert his speedy trial right, seriously compromises the strength of appellant's claim that he was denied his right. In its seminal opinion, the United States Supreme Court established the importance of a defendant's actions or inactions in asserting the right to a speedy trial:

> The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. Barker*, 407 U.S. at 531–32, 92 S.Ct. 2182 (emphasis added).

The importance of the Court's statement in *Barker* as to the weight to be given a defendant's assertion of the right to a speedy trial becomes highly relevant to appellant's case when the facts of *Barker* are compared to the facts in appellant's case. In *Barker*, Willie Barker and Silas Manning were accused of beating an elderly couple to death on July 20, 1958. Barker and Manning were arrested shortly after the beating deaths and were indicted on September 15, 1958. Counsel was appointed for Barker on September 17th. Barker's trial was set for October 21, 1958. Manning's trial was set for October 23rd. The State elected to try Manning before Barker, so Manning would be available to testify in Barker's trial without the impediment of Manning being able to claim his right against self-incrimination. The State moved to continue Barker's trial because Manning's trial had not been completed. The State had difficulty trying and convicting Manning. The first trial ended with a

---

1. Appellant's Motion to Dismiss for Failure to Grant a Speedy Trial bears a file mark dated March 24, 1998. The motion recites that the "case is now set for trial on July 31, 1995." The motion further recites that Willie Merrell, an alibi witness, passed away on July 2, 1995. Counsel for appellant stated during the pretrial hearings that he thought the motion had been filed in 1995, but that the clerk had no record of any such filing, and he therefore filed the motion on the morning of the 1998 pretrial hearing. The clerk's record has no indication of a Motion to Dismiss having been filed in 1995. There is no evidence that the State's attorney received a copy of a Motion to Dismiss before the March 24, 1998 filing.

hung jury. The second trial resulted in a conviction which was reversed on appeal. Manning was convicted again at the third trial, but the conviction was again reversed on appeal. The fourth trial resulted in a hung jury. Manning was convicted of killing one of the victims at his fifth trial in March, 1962; and convicted of killing the other victim at a sixth trial in December, 1962. The fifth and sixth trial convictions were not appealed. During all the procedures and trials involving Manning, Barker was waiting for his day in court. The State applied for and received sixteen continuances of settings for Barker's trial before he was ultimately tried and convicted in October, 1963. Barker's attorney made no objection to the first eleven motions for continuance. Barker objected to the twelfth motion which the State filed in February, 1962, and filed a motion to dismiss the indictment. The motion was denied. Barker did not object to the next two motions for continuance by the State, but objected to the fifteenth and sixteenth motions. Those objections were denied. On October 9, 1963, the day Barker's trial finally began, his attorney filed a motion to dismiss the indictment and urged as a basis for the motion that Barker's right to a speedy trial had been violated. The motion was overruled and Barker was convicted at the October trial. *Barker*, 407 U.S. at 516–18, 92 S.Ct. 2182.

Barker did not request any continuances of trial settings. He objected to several motions for continuance filed by the State during the period of over five years between the time he was arrested and the time he was finally tried and convicted. Nevertheless, the Supreme Court concluded that Barker had not been so deprived of his due process right to a speedy trial that his conviction should be reversed and the charges dismissed. *Barker*, 407 U.S. at 536, 92 S.Ct. 2182.

Appellant made less of an effort to protest the length of time it took the State to bring him to trial than did Barker. The failure of appellant to assert his right to a speedy trial or to protest the alleged denial of such right except for the filing of one pretrial motion to dismiss almost five years after his arrest on the charge weighs very heavily against appellant, as it did Barker.

### (4). Prejudice

■ The United States Supreme Court noted in its *Barker* opinion that trial delay can be harmful to a defendant in three ways: (1) pretrial incarceration may be oppressive; (2) the accused may be unduly subjected to anxiety and concern; or (3) the accused's defense may be impaired. *Id.* at 532, 92 S.Ct. 2182. It is the defendant's burden to make a prima facie showing of prejudice. If such a showing is made by the defendant, the burden shifts to the State to prove that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay of trial. *Ex Parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim.App.1973).

■ Appellant was the sole witness to testify at the hearing on his motion to dismiss. The judgment shows that appellant was in custody on April 8, 1993 and was released on May 14, 1993. His testimony did not include any complaint that he was unduly incarcerated or that his incarceration impaired his life or trial preparation in any way.

Further, appellant did not present evidence that he suffered any impairment or prejudice of his life because of being under the charge that he burglarized the McFarland home. He did not complain of losing jobs, opportunities for jobs, of suffering from what he perceived to be community ill will, or of having feelings of other detriment because of the existence of the charge pending for so long without trial.

Finally, appellant did not prove that his defense was impaired by the delay. Appellant testified that his grandfather and grandmother were both "alibi witnesses" for him. He did not prove what testimony his grandparents would have been able to give. He did not testify where he was on the morning of the crime, or that he was

with his grandparents at the time the crime was alleged to have occurred. Appellant testified that a third person, Rene Vaughn, "might" have been an alibi witness. Appellant could not recall whether he saw her the morning of the crime or the evening of the crime. He presented no evidence of what she would have testified to if she had been available for trial.

When the non-availability of a witness is the basis of the claim of prejudice, the appellant must show that the witness was unavailable at the time of trial, that the testimony that would have been offered through the witness was relevant and material to the defense, and that due diligence was exercised in an attempt to locate the witness for trial. *McCarty v. State*, 498 S.W.2d 212, 218 (Tex.Crim.App.1973); *see Harlan*, 975 S.W.2d at 390. The case before us is not a situation in which location of witnesses was unknown. Instead, if believed, appellant's testimony showed that at least two persons appellant classified as "alibi" witnesses were unavailable for trial. One was dead and the other had developed illnesses and mental infirmities making her unavailable to testify. Appellant claimed that the alibi witnesses were available to testify up through at least 1994. However, appellant did not testify that he was not at the scene of the crime on the morning of the crime, nor that he was in his grandparents' presence for any part of the morning of the crime. The trial court was able to observe appellant and pass on the credibility of appellant and his interested, although uncontradicted, testimony concerning lost witnesses.[2] The trial court stated that he had no doubt that the trial delay resulted in the loss of some previously-available witnesses. Significantly, in denying appellant's motion to dismiss, the trial court neither stated nor found that the loss of

witnesses resulted in prejudice to appellant.

At trial appellant did not testify. The evidence presented on appellant's case-in-chief consisted of a stipulation as to testimony of the officer who examined the glass display case in the McFarland home for fingerprints, and of recalling Amarillo police officer Kuster to clarify testimony she gave when she testified during the case for the prosecution. Appellant presented no defense witnesses whose testimony had been impaired by the passage of time between the 1993 burglary date and the date of trial.

We conclude that the fourth factor under *Barker* does not weigh against the State, as appellant has not proved a *prima facie* case of prejudice due to the delay. *See Ex parte McKenzie*, 491 S.W.2d at 123. Appellant has not pointed out any alleged prejudice other than the loss of claimed alibi witness testimony. And, as noted above, appellant did not prove what relevant and material evidence or facts any unavailable witness would have testified to.

In sum, two of the four factors set out in *Barker* weigh against the State. We concur in the concern candidly expressed by the State's attorney at oral argument over the length of time that transpired before appellant's case went to trial. In our balancing of the *Barker* factors, however, we adhere to the teaching of *Barker* that "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531–32, 92 S.Ct. 2182. *See also Harlan*, 975 S.W.2d at 390. We give great weight to appellant's extended failure to claim a right that he now asserts should entitle him to the drastic remedy of dismissal of charges against him. We conclude that appellant has not proved that

2. Appellant's Motion to Dismiss (which recites that trial is scheduled for July 31,1995) was to some extent inconsistent with appellant's testimony. The motion made no mention of the alleged 1994 incompetency of appellant's grandmother and the resulting loss

of her testimony which he asserted when he testified in his 1998 pretrial hearing. Nor did the motion mention Rene Vaughn as another possible "alibi" witness having been lost in 1994 as appellant claimed in his pretrial hearing testimony.

his constitutional right to a speedy trial was violated. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.