NO. 07-05-0376-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



NOVEMBER 1, 2005



______________________________



IN RE KENDRICK J. FULTON, RELATOR


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 In this original proceeding, relator, Kendrick J. Fulton, seeks a writ of mandamus
directing the Honorable John B. Board of the 181st District Court to "order" service of
process on the real parties in interest and to recuse himself from further proceedings
involving the underlying suit. We deny the petition.

 Rule 99 of the Texas Rules of Civil Procedure governs the issuance and form of
citation. (1) Pursuant to Rule 99, a party filing a petition is required to request that citation be
served on the opposing party and to direct the clerk of the court where to serve the
opposing party. Rule 99(a). Relator contends that the duty to order citation rests with the
trial court judge. Rule 99 clearly indicates the error of appellant's position. The law
imposes no duty on the trial judge to monitor citation or to order citation be issued sua
sponte. A writ of mandamus issues only to correct a clear abuse of discretion or the
violation of a duty imposed by law when there is no other adequate remedy at law. 
Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding). 
In as much as appellant has failed to show that the trial court abused its discretion by not
issuing citation, relator's request is denied.

 Relator also contends that the trial court should recuse itself from further
proceedings. Recusal of a judge is governed by the provisions of Rule 18(a). This Rule
requires the filing of a motion with the clerk of the Court stating the grounds upon which
the judge should recuse himself. Id. The only document before this court is relator's
petition. None of the documents filed in the trial court are appended as required by the
Texas Rule of Appellate Procedure 52.3(j). Therefore, we are unable to determine if any
motion for recusal has been filed by relator. Further, even if the motion has been filed with 
the trial court and denied, a direct appeal is an adequate remedy and, thus, mandamus
relief is not proper. In Re Union Pac. Res. Co., 969 S.W.2d 427, 427 (Tex. 1998). 
Accordingly, this part of relator's request is denied.

 Having reviewed and rejected both of relators requests, we deny relator's petition
for writ of mandamus.


Mackey K. Hancock


Justice


 
1. Further reference to the Texas Rules of Civil Procedure will be by reference to
"Rule __."


NO. 07-08-0079-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 17, 2008

______________________________


BILLY G. IVEY, JR., APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-416244; HON. BRADLEY S. UNDERWOOD, PRESIDING

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ. 
 
MEMORANDUM OPINION
 
          Appellant Billy G. Ivey, Jr. appeals from his jury conviction for burglary of a habitation
with intent to commit theft and the resulting sentence of life imprisonment. Through three
issues, appellant contends the evidence was legally insufficient (1) to support his conviction
and (2) to support the jury’s finding of “true” to the second enhancement paragraph in the
indictment, and contends (3) his trial counsel was ineffective for failing to file a pretrial
motion to suppress appellant’s identification. Finding the evidence legally insufficient to
support appellant’s conviction, we reverse and render a judgment of acquittal.
Background
          Through a May 2007 indictment, appellant was charged with “intentionally, without
the effective consent of Clinton Hall, the owner thereof, enter[ing] a habitation with intent
to commit theft.”


 The indictment also contained two enhancement paragraphs setting forth
appellant’s two prior final felony convictions. Following appellant’s plea of not guilty, the
matter proceeded to jury trial.
          At trial, the State presented evidence through the testimony of several witnesses,
including the complainant and police officers, to show that at about midnight on April 25,
2007, Clinton Hall and his girlfriend, Chelsea Garza, prepared to go to sleep in the
residence where they lived with Garza’s mother and her friend. Hall and Garza heard their
dogs barking, heard activity in the living room, and saw the knob on their bedroom door
move. Hall opened the bedroom door and saw an unknown intruder in the house with his
back to Hall. Hall chased the intruder out of the house, then got into a car and searched
for the intruder. When he did not find him, he returned home and called the police.


 
          Police responded, immediately conducting a search of the area. When his search
was unsuccessful, the responding officer returned to the residence and spoke with Hall and
Garza. As Hall was speaking with the officer in the home’s driveway, the officer saw a white
pick-up truck with the headlights off slowly approach from the direction the subject ran after
leaving Hall’s home. It appeared to the officer that when the driver saw the police car, he
turned on the headlights and took off suddenly. The officer pursued the truck in his patrol
car but the truck failed to stop. After a chase, the driver abandoned the truck, leaving its
doors locked and its engine running.
          Information inside the truck led officers to appellant’s nearby residence. Appellant
answered the door clad only in boxer shorts and told officers he had been “dead asleep.” 
Police brought Hall and Garza to appellant’s residence, where they remained in the back
of the police car while appellant was brought out in handcuffs, still wearing only his boxer
shorts. Hall told officers appellant “fits our description very, very closely.” Appellant was
arrested.
          Appellant presented his case through cross-examination of the State’s witnesses,
during which he highlighted the absence of evidence tending to connect him with the
burglary. Appellant contended he was not the individual who burglarized Hall’s residence.
          After hearing the evidence, the jury found appellant guilty as charged in the
indictment, found the enhancement allegations true, and sentenced him to life in prison. 
Appellant timely appealed.
 
Analysis
Issue One–Legal Sufficiency of Evidence to Support Appellant’s Conviction
          Via appellant’s first issue, he contends the evidence is legally insufficient to support
his conviction. As charged in the indictment, to establish that appellant committed burglary
of a habitation, the State had to prove that: (1) appellant; (2) entered a habitation; (3)
without the effective consent of the owner; and (4) with intent to commit a theft.


 Tex. Penal
Code Ann. § 30.02(a)(1) (Vernon 2007). Appellant’s challenge focuses on the proof of his
identity as the burglar.
          In conducting a legal sufficiency review, we must determine whether, after reviewing
the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 318-19, 199 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hooper v. State,
214 S.W.3d 9, 13 (Tex.Crim.App. 2007); Fowler v. State, 65 S.W.3d 116, 118
(Tex.App.–Amarillo 2001, no pet.). If, based on all the evidence, a reasonably-minded jury
must necessarily entertain a reasonable doubt of the defendant’s guilt, due process requires
that we reverse and order a judgment of acquittal. Swearingen v. State, 101 S.W.3d 89,
95 (Tex.Crim.App. 2003), citing Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App.
1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Circumstantial
evidence is as probative as direct evidence in establishing the guilt of an actor and the
standard of review on appeal is the same for both direct and circumstantial evidence cases. 
Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); Kutzner v. State, 994 S.W.2d
180, 184 (Tex.Crim.App. 1999); Smith v. State, 56 S.W.3d 739, 744 (Tex.App.–Houston
[14th Dist.] 2001, no pet.). 
          Identity may be proved through direct or circumstantial evidence, and through
inferences. Smith, 56 S.W.3d at 744; Roberson v. State, 16 S.W.3d 156, 157
(Tex.App.–Austin 2000, pet. ref’d); Mabra v. State, 997 S.W.2d 770, 774
(Tex.App.–Amarillo 1999, pet. ref’d). In a circumstantial-evidence case, it is unnecessary
for every fact to point directly and independently to the defendant’s guilt; rather, it is
sufficient if the finding of guilt is supported by the cumulative force of all the incriminating
evidence. Powell v. State, 194 S.W.3d 503, 507 (Tex.Crim.App. 2006); Beardsley v. State,
738 S.W.2d 681, 685 (Tex.Crim.App. 1987); White v. State, 702 S.W.2d 293, 294
(Tex.App.–Amarillo 1985, no pet.).
          As an appellate court, we are not to re-evaluate the weight and credibility of the
evidence, but only ensure that the jury reached a rational decision. Muniz v. State, 851
S.W.2d 238, 246 (Tex.Crim.App. 1993). A reviewing court must give deference to “the
responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts.” Hooper, 214 S.W.3d
at 13, quoting Jackson, 443 U.S. at 318-19. Under the Jackson standard, we permit juries
to draw multiple reasonable inferences as long as each inference is supported by evidence
presented at trial. Hooper, 214 S.W.3d at 15. However, juries are not permitted to reach
conclusions based on mere speculation or factually unsupported inferences or
presumptions. Id. at 16. When we consider a contention that a jury’s finding based on
inferences is not supported by legally sufficient evidence, our task is to determine whether
the necessary inferences are reasonable based on the combined and cumulative force of
all the evidence when viewed in the light most favorable to the verdict. Id. at 16-17.
          Here, to uphold appellant’s conviction, we must find the State proved, beyond a
reasonable doubt, that appellant is the person who committed the crime charged. Smith, 56
S.W.3d at 744, citing Johnson v. State, 673 S.W.2d 190, 196 (Tex.Crim.App. 1984); Rice
v. State, 801 S.W.2d 16, 17 (Tex.App.–Fort Worth 1990, pet. ref’d). While conceding there
is no direct evidence linking appellant to Hall’s residence, the State argues the jury properly
inferred his guilt from the surrounding facts and circumstances.
          We agree, and appellant concedes on appeal, that a rational jury could have inferred
from the evidence presented at trial that appellant was the driver of the white pick-up truck.


 
Thus, evidence establishes appellant drove past the scene of the burglary, coming from the
direction the burglar ran from Hall. While a suspect’s mere presence at or near the scene
of the crime does not prove his involvement in the crime, it is a circumstance tending to
prove guilt which, combined with other facts, may suffice to show the accused was a
participant. Mabra, 997 S.W.2d at 774; Rocha v. State, 787 S.W.2d 136, 138
(Tex.App.–Corpus Christi 1990, no pet.). See also Brooks v. State, 830 S.W.2d 817
(Tex.App.–Houston [1st Dist.] 1992, no pet.) (proximity to a crime scene may be a factor
influencing the existence of reasonable suspicion). The jury could have believed appellant
was attempting to avoid detection by driving slowly past the residence with the truck’s lights
off. We agree with the State also that appellant’s behavior in fleeing from police at the
scene of the crime reasonably leads to an inference of guilt. See Clayton v. State, 235
S.W.3d 772, 780 (Tex.Crim.App. 2007); Foster v. State, 779 S.W.2d 845, 859
(Tex.Crim.App. 1989); Atkins v. State, No. 14-07-00051-CR, 2008 WL 2834700
(Tex.App.–Houston [14th Dist.] July 17, 2008, no pet.) (mem. op., not designated for
publication) (a fact finder may draw an inference of guilt from the circumstance of flight). 
The jury could draw a similar inference of appellant’s consciousness of guilt from evidence
of his attempt to deceive officers at his residence when he told them he had been “dead
asleep.” See, e.g., Robinson v. State, 236 S.W.3d 260, 268 (Tex.App.–Houston [1st Dist.]
2007, pet. ref’d) (holding flight and use of fake name admissible to show consciousness of
guilt).
          The jury also heard testimony there was no traffic other than the white pick-up
around Hall’s residence at the time of the burglary. The residence was located in an area
of Lubbock with few homes, intermixed with commercial property. The officer who
responded to Hall’s 911 call said he encountered “no activity at all” during his search of the
neighborhood.
          Hall testified on cross examination that about an hour elapsed from the time he heard
the noise in his home until he met with the officer in the driveway. The State suggests the
jury could have discounted that statement and believed from the evidence that the time
between the burglary and appellant’s drive past the residence was shorter. In any event,
it is clear that it was some time after the burglary that appellant drove past Hall’s residence. 
Testimony showed appellant lived in the same general area of town, perhaps half a mile
from the burglarized residence. 
          None of that evidence, however, places appellant inside the residence as the burglar. 
As noted, the State concedes no direct evidence ties appellant to the residence. 
          The State next points to statements Hall made to officers on the night of the
burglary.


 Those statements fall short of a positive identification of appellant as the burglar. 
During the State’s direct examination at trial, Hall testified as follows concerning his
statements when he and Garza viewed appellant from the patrol car: 
          Q. (Prosecutor)       And how did that–when you got there to the scene, you all
stayed in the car?
          A. (Hall)                  Right.
          Q.                            And did they bring the suspect out? How did that work?
          A.                             They brought the suspect out in handcuffs, and they brought
him with his face turned towards us. He was standing at the
front of the cruiser. And they asked us if that was the
gentleman. And I said that he fits our description very, very
closely. I said I never saw his face. I can’t give you a for sure
description.
          Q.                            Would it sound about right that you said something that’s about
his build, his haircut and everything?
          A.                             Yes, ma’am.
          Q.                            But again, you maintain you didn’t see him in the face?
          A.                             Right.
          Q.                            Okay. But everything that as far as your description goes and
what you saw in the suspect that they had matched–your
description matched the suspect they had?
          A.                             Right.
 
          Also admitted at trial was a video recording of Hall and Garza as they viewed
appellant from the patrol car’s back seat. Hall’s responses to officers’ questions are
audible. The recording confirms that Hall’s statements at trial were generally consistent with
his statements on the night of the burglary.
          In addition, the jury heard officers’ testimony to what Hall said on the night of the
burglary. One officer testified at trial that Hall and Garza “positively identified the subject
[appellant] as matching the description, the subject who was in the residence.” The officer
also testified that Hall, while sitting in the patrol car and looking at appellant, said he “looks
almost just like the guy.”
          Testimony showed the description appellant matched was that given by Hall, who
had described the intruder to officers as a white male, approximately 5'10", thin build,
wearing blue jeans, with a short haircut. This description, with slight variations, was
mentioned throughout trial. Evidence that appellant very closely fit Hall’s description is
probative, and evidence that Hall, shortly after the events, recognized appellant as very
closely fitting the description adds to its probative force. If the State’s burden was only to
prove that appellant matched Hall’s description of the burglar, we would have no difficulty
finding the evidence sufficient.


 But many people would closely fit such a general
description, and the State’s burden was greater. It was obliged to prove beyond a
reasonable doubt that appellant was the burglar Hall saw. The evidence of appellant’s
description, location, flight and deception show appellant may have been the burglar, and
are consistent with his identity as the burglar. But inferring from the State’s evidence that
appellant was the person Hall encountered in his residence required the jury to go beyond
deducing a logical consequence from established facts and enter the realm of speculation.


 
As the Court of Criminal Appeals noted in Hooper, a conclusion reached by speculation may
not be completely unreasonable, but it is not sufficiently based on facts or evidence to
support a finding beyond a reasonable doubt. Hooper, 214 S.W.3d at 16. 
          Concluding that the combined force of the State’s evidence of appellant’s identity as
the intruder in Hall’s residence, even when viewed in the light most favorable to the jury’s
verdict, falls considerably short of proof of that fact beyond a reasonable doubt, we sustain
appellant’s first issue, reverse the trial court’s judgment and render a judgment of acquittal.
 
James T. Campbell

Justice

Do not publish.