NO. 07-08-0079-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 17, 2008

_____

BILLY G. IVEY, JR., APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-416244; HON. BRADLEY S. UNDERWOOD, PRESIDING

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Billy G. Ivey, Jr. appeals from his jury conviction for burglary of a habitation with intent to commit theft and the resulting sentence of life imprisonment. Through three issues, appellant contends the evidence was legally insufficient (1) to support his conviction and (2) to support the jury's finding of "true" to the second enhancement paragraph in the indictment, and contends (3) his trial counsel was ineffective for failing to file a pretrial

motion to suppress appellant's identification. Finding the evidence legally insufficient to support appellant's conviction, we reverse and render a judgment of acquittal.

Background

Through a May 2007 indictment, appellant was charged with "intentionally, without the effective consent of Clinton Hall, the owner thereof, enter[ing] a habitation with intent to commit theft."[1] The indictment also contained two enhancement paragraphs setting forth appellant's two prior final felony convictions. Following appellant's plea of not guilty, the matter proceeded to jury trial.

At trial, the State presented evidence through the testimony of several witnesses, including the complainant and police officers, to show that at about midnight on April 25, 2007, Clinton Hall and his girlfriend, Chelsea Garza, prepared to go to sleep in the residence where they lived with Garza's mother and her friend. Hall and Garza heard their dogs barking, heard activity in the living room, and saw the knob on their bedroom door move. Hall opened the bedroom door and saw an unknown intruder in the house with his back to Hall. Hall chased the intruder out of the house, then got into a car and searched for the intruder. When he did not find him, he returned home and called the police.[2]

---

[1] *See* Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003).

[2] In his call, Hall reported he "did not see [the intruder's] face," it was "dark" and the intruder was "outside before I saw him." In addition to the audio recording of the 911 call, the evidence at trial included recordings taken by police patrol car video recorders.

Police responded, immediately conducting a search of the area. When his search was unsuccessful, the responding officer returned to the residence and spoke with Hall and Garza. As Hall was speaking with the officer in the home's driveway, the officer saw a white pick-up truck with the headlights off slowly approach from the direction the subject ran after leaving Hall's home. It appeared to the officer that when the driver saw the police car, he turned on the headlights and took off suddenly. The officer pursued the truck in his patrol car but the truck failed to stop. After a chase, the driver abandoned the truck, leaving its doors locked and its engine running.

Information inside the truck led officers to appellant's nearby residence. Appellant answered the door clad only in boxer shorts and told officers he had been "dead asleep." Police brought Hall and Garza to appellant's residence, where they remained in the back of the police car while appellant was brought out in handcuffs, still wearing only his boxer shorts. Hall told officers appellant "fits our description very, very closely." Appellant was arrested.

Appellant presented his case through cross-examination of the State's witnesses, during which he highlighted the absence of evidence tending to connect him with the burglary. Appellant contended he was not the individual who burglarized Hall's residence.

After hearing the evidence, the jury found appellant guilty as charged in the indictment, found the enhancement allegations true, and sentenced him to life in prison. Appellant timely appealed.

3

Analysis

*Issue One–Legal Sufficiency of Evidence to Support Appellant's Conviction*

Via appellant's first issue, he contends the evidence is legally insufficient to support his conviction. As charged in the indictment, to establish that appellant committed burglary of a habitation, the State had to prove that: (1) appellant; (2) entered a habitation; (3) without the effective consent of the owner; and (4) with intent to commit a theft.[3] Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2007). Appellant's challenge focuses on the proof of his identity as the burglar.

In conducting a legal sufficiency review, we must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 199 S.Ct. 2781, 61 L.Ed.2d 560 (1979)*; Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007); *Fowler v. State,* 65 S.W.3d 116, 118 (Tex.App.–Amarillo 2001, no pet.). If, based on all the evidence, a reasonably-minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003), *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and the

_____

[3] Other modes of committing burglary were not charged here. *See* Tex. Penal Code Ann. § 30.02(a)(2), (3) (Vernon 2007).

4

standard of review on appeal is the same for both direct and circumstantial evidence cases. *Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App. 1999); *Smith v. State,* 56 S.W.3d 739, 744 (Tex.App.–Houston [14th Dist.] 2001, no pet.).

Identity may be proved through direct or circumstantial evidence, and through inferences. *Smith,* 56 S.W.3d at 744; *Roberson v. State,* 16 S.W.3d 156, 157 (Tex.App.–Austin 2000, pet. ref'd); *Mabra v. State,* 997 S.W.2d 770, 774 (Tex.App.–Amarillo 1999, pet. ref'd). In a circumstantial-evidence case, it is unnecessary for every fact to point directly and independently to the defendant's guilt; rather, it is sufficient if the finding of guilt is supported by the cumulative force of all the incriminating evidence. *Powell v. State,* 194 S.W.3d 503, 507 (Tex.Crim.App. 2006); *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987); *White v. State,* 702 S.W.2d 293, 294 (Tex.App.–Amarillo 1985, no pet.).

As an appellate court, we are not to re-evaluate the weight and credibility of the evidence, but only ensure that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App. 1993). A reviewing court must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, quoting *Jackson*, 443 U.S. at 318-19. Under the *Jackson* standard, we permit juries to draw multiple reasonable inferences as long as each inference is supported by evidence presented at trial. *Hooper,* 214 S.W.3d at 15. However, juries are not permitted to reach

conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* at 16. When we consider a contention that a jury's finding based on inferences is not supported by legally sufficient evidence, our task is to determine whether the necessary inferences are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* at 16-17.

Here, to uphold appellant's conviction, we must find the State proved, beyond a reasonable doubt, that appellant is the person who committed the crime charged. *Smith,* 56 S.W.3d at 744, *citing Johnson v. State,* 673 S.W.2d 190, 196 (Tex.Crim.App. 1984); *Rice v. State,* 801 S.W.2d 16, 17 (Tex.App.–Fort Worth 1990, pet. ref'd). While conceding there is no direct evidence linking appellant to Hall's residence, the State argues the jury properly inferred his guilt from the surrounding facts and circumstances.

We agree, and appellant concedes on appeal, that a rational jury could have inferred from the evidence presented at trial that appellant was the driver of the white pick-up truck.[4] Thus, evidence establishes appellant drove past the scene of the burglary, coming from the direction the burglar ran from Hall. While a suspect's mere presence at or near the scene of the crime does not prove his involvement in the crime, it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show the accused was a participant. *Mabra,* 997 S.W.2d at 774*; Rocha v. State,* 787 S.W.2d 136, 138 (Tex.App.–Corpus Christi 1990, no pet.). *See also Brooks v. State,* 830 S.W.2d 817 (Tex.App.–Houston [1st Dist.] 1992, no pet.) (proximity to a crime scene may be a factor

---

[4] The truck's owner, who was appellant's employer, confirmed appellant had driven the truck that day.

influencing the existence of reasonable suspicion). The jury could have believed appellant was attempting to avoid detection by driving slowly past the residence with the truck's lights off. We agree with the State also that appellant's behavior in fleeing from police at the scene of the crime reasonably leads to an inference of guilt. *See Clayton v. State,* 235 S.W.3d 772, 780 (Tex.Crim.App. 2007); *Foster v. State,* 779 S.W.2d 845, 859 (Tex.Crim.App. 1989); *Atkins v. State,* No. 14-07-00051-CR, 2008 WL 2834700 (Tex.App.–Houston [14th Dist.] July 17, 2008, no pet.) (mem. op., not designated for publication) (a fact finder may draw an inference of guilt from the circumstance of flight). The jury could draw a similar inference of appellant's consciousness of guilt from evidence of his attempt to deceive officers at his residence when he told them he had been "dead asleep." *See, e.g., Robinson v. State,* 236 S.W.3d 260, 268 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd) (holding flight and use of fake name admissible to show consciousness of guilt).

The jury also heard testimony there was no traffic other than the white pick-up around Hall's residence at the time of the burglary. The residence was located in an area of Lubbock with few homes, intermixed with commercial property. The officer who responded to Hall's 911 call said he encountered "no activity at all" during his search of the neighborhood.

Hall testified on cross examination that about an hour elapsed from the time he heard the noise in his home until he met with the officer in the driveway. The State suggests the jury could have discounted that statement and believed from the evidence that the time

7

between the burglary and appellant's drive past the residence was shorter. In any event, it is clear that it was some time after the burglary that appellant drove past Hall's residence. Testimony showed appellant lived in the same general area of town, perhaps half a mile from the burglarized residence.

None of that evidence, however, places appellant inside the residence as the burglar. As noted, the State concedes no direct evidence ties appellant to the residence.

The State next points to statements Hall made to officers on the night of the burglary.[5] Those statements fall short of a positive identification of appellant as the burglar. During the State's direct examination at trial, Hall testified as follows concerning his statements when he and Garza viewed appellant from the patrol car:

| Q. (Prosecutor) | And how did that–when you got there to the scene, you all stayed in the car? |
| --- | --- |
| A. (Hall) | Right. |
| Q. | And did they bring the suspect out? How did that work? |
| A. | They brought the suspect out in handcuffs, and they brought him with his face turned towards us. He was standing at the front of the cruiser. And they asked us if that was the gentleman. And I said that he fits our description very, very closely. I said I never saw his face. I can't give you a for sure description. |
| Q. | Would it sound about right that you said something that's about his build, his haircut and everything? |
| A. | Yes, ma'am. |
| Q. | But again, you maintain you didn't see him in the face? |
| A. | Right. |

---

[5] Hall was not asked at trial to identify appellant as the burglar.

Q.          Okay.  But everything that as far as your description goes and what you saw in the suspect that they had matched–your description matched the suspect they had?

A.          Right.

Also admitted at trial was a video recording of Hall and Garza as they viewed appellant from the patrol car's back seat.  Hall's responses to officers' questions are audible.  The recording confirms that Hall's statements at trial were generally consistent with his statements on the night of the burglary.

In addition, the jury heard officers' testimony to what Hall said on the night of the burglary.  One officer testified at trial that Hall and Garza "positively identified the subject [appellant] as matching the description, the subject who was in the residence."  The officer also testified that Hall, while sitting in the patrol car and looking at appellant, said he "looks almost just like the guy."

Testimony showed the description appellant matched was that given by Hall, who had described the intruder to officers as a white male, approximately 5'10", thin build, wearing blue jeans, with a short haircut. This description, with slight variations, was mentioned throughout trial. Evidence that appellant very closely fit Hall's description is probative, and evidence that Hall, shortly after the events, recognized appellant as very closely fitting the description adds to its probative force.  If the State's burden was only to prove that appellant matched Hall's description of the burglar, we would have no difficulty finding the evidence sufficient.[6]  But many people would closely fit such a general

---

[6] A police report made after appellant's arrest gave his physical description as "5'11", 150 pounds, [short] brown hair, brown eyes, light skin."

9

description, and the State's burden was greater. It was obliged to prove beyond a reasonable doubt that appellant was the burglar Hall saw. The evidence of appellant's description, location, flight and deception show appellant may have been the burglar, and are consistent with his identity as the burglar. But inferring from the State's evidence that appellant was the person Hall encountered in his residence required the jury to go beyond deducing a logical consequence from established facts and enter the realm of speculation.[7] As the Court of Criminal Appeals noted in *Hooper*, a conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Hooper,* 214 S.W.3d at 16.

Concluding that the combined force of the State's evidence of appellant's identity as the intruder in Hall's residence, even when viewed in the light most favorable to the jury's verdict, falls considerably short of proof of that fact beyond a reasonable doubt, we sustain appellant's first issue, reverse the trial court's judgment and render a judgment of acquittal.

James T. Campbell
Justice

Do not publish.

---

[7] Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Hooper,* 214 S.W.3d at 16.